[Civ. No. 31687. First Dist., Div. Four. Feb. 21, 1974.]

NEIL J. PRUNTY et al., Plaintiffs and Respondents, v.
BANK OF AMERICA et al., Defendants and Appellants.

## COUNSEL

William S. MacKay, Robert A. Padway and Theodore Sachsman for Defendants and Appellants.

Robert A. Kaiser and Joan M. Sautter for Plaintiffs and Respondents.

## OPINION

**RATTIGAN, Acting P. J.**—The question presented on this appeal (apparently as a matter of first impression) is whether Code of Civil Procedure section 580b[1] bars a deficiency judgment, against a borrower and in favor of a lender, after judicial foreclosure and sale of real property under a deed of trust executed by the borrower to secure payment of a "construction loan" (1) which was used to finance construction of his personal residence on land already owned by him in fee, but (2) which was not used to finance his purchase of the land itself. We hold that the statute bars a deficiency judgment under the circumstances presented here.

Plaintiffs are the owners in fee of certain real property upon which they executed a deed of trust, in favor of defendant Bank of America as beneficiary, to secure payment of a construction loan made by the bank to them for the purpose of financing the erection of a residence on the property. The residence was built and completed with the proceeds of the construction loan, but was demolished as the result of a natural disaster. In this action, thereafter commenced against the bank and the trustee under the deed of trust (defendant Continental Auxiliary Company), plaintiffs sought a declaratory judgment to the effect that Code of Civil Procedure section

---

[1]We hereinafter refer to the cited statute as "section 580b" or as "the statute." The language thereof which controls the present case appears in its text as amended in 1963 (Stats. 1963, ch. 2158, § 1, p. 4500) to provide in pertinent part as follows (with the 1963 amendment shown by italics): "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given *to the vendor* to secure payment of the balance of the purchase price of real property, *or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser.*

"Where both a chattel mortgage and a deed of trust or mortgage have been given to secure payment of the balance of the combined purchase price of both real and personal property, no deficiency judgment shall lie at any time under any one thereof *if no deficiency judgment would lie under the deed of trust or mortgage on real property.*"

As originally enacted in 1933, and as reenacted without change in 1935, the statute contained this language only: "No deficiency judgment shall lie in any event after any sale under a deed of trust or mortgage given to secure payment of the balance of the purchase price of real property." (Stats. 1933, ch. 642, § 5, p. 1673; Stats. 1935, ch. 650, §§ 5, p. 1806, 9, p. 1807.)

The statute's present language relative to a sale of real property after default under a "contract of sale" was added in 1935 (Stats. 1935, ch. 680, § 1, pp. 1868-1869); its second paragraph was added in 1949. (Stats. 1949, ch. 1599, § 1, p. 2846.) Neither of these provisions is involved in the present case.

580b barred the bank from recovering a deficiency judgment in the event of their default and a *judicial* foreclosure and sale under the deed of trust.[2]

After a nonjury trial, the court found in favor of plaintiffs and entered a declaratory judgment substantially as prayed. Defendants appeal from the declaratory judgment.

*Facts*

Including those just summarized, most of the material facts appear in the trial court's findings. For this reason, and because they are undisputed, we quote the findings (with insignificant editorial changes, and with footnoted references to some evidence not specifically mentioned therein) as follows:

"FINDINGS OF FACT

"1. In 1964, plaintiffs purchased with their own funds certain unimproved real property generally known and described as 6163 Chelton Drive, Oakland, California, intending to build their own home thereon. 2. In 1965, while the property was still unimproved, plaintiffs applied to defendant Bank of America for a loan in the sum of $40,000. 3. On June 23, 1965, defendant Bank of America loaned $40,000 to plaintiffs[3] and plaintiffs gave defendant their note in the sum of $40,000 and a deed of trust against said real property. 4. Said note provided that said loan would be repaid in equal monthly installments, including principal and interest, over a 25-year period.

---

[2]It bears mentioning that a deficiency judgment in the bank's favor would be absolutely barred if the trustee were to sell plaintiffs' property *extrajudicially* under a power of sale contained in their deed of trust (Code Civ. Proc., § 580d), and that this fact motivates plaintiffs in seeking a declaration that section 580b similarly bars such judgment after *judicial* foreclosure and sale.

[3]There was undisputed evidence that defendant bank examined and approved plaintiffs' plans and specifications for the proposed residence prior to approving their loan application. The application was approved in a written loan "commitment" which was made subject to the express conditions (among others) that any changes in the plans be approved by the bank; that certain "structural details" be incorporated in the existing plans requiring the use of steel columns and beams, of a "reinforced concrete pad and pedestal foundations," and of "steel truss and stud construction" in the residence; that plaintiffs furnish a "soils engineer's report indicating that [the] site is suitable for the structure as planned," and "an opinion from a soils engineer or a registered structural engineer, that [the] foundations, as designed, are adequate for [the] site"; that plaintiffs furnish "a new set of foundation plans if required"; that an engineer be on the site at the time the foundation was poured and that he "approve, in writing, . . . placement of drain tile, reinforcing and concrete"; and that "construction work . . . be supervised by . . . [plaintiffs'] . . . architect." It is also undisputed that plaintiffs met all of these conditions in the course of the loan transaction and the construction of their residence.

"5. The forms of the note and deed of trust used in the transaction by the [defendant] Bank of America were the same as the forms it would use for a loan to an individual to purchase real property with a home already constructed on it. 6. Said deed of trust was recorded on June 25, 1965, in the official records of Alameda County . . .

"7. It was intended both by plaintiffs and defendants that the repayment of said loan would be secured by said deed of trust which would cover not only the land but also a dwelling to be constructed thereon. 8. At the time of the application for said loan and at the time of the execution and recording of said deed of trust, plaintiffs intended to use the proceeds of said loan to construct a single family residential dwelling on the property, which they themselves would occupy, and defendant Bank of America was aware and intended that the proceeds of said loan would be so used.

"9. All the proceeds of said loan were used by plaintiffs to pay the purchase price of labor and materials which were used in constructing a single family residence on the property. 10. Defendant Bank of America would not have made said loan had not the entire proceeds of said loan been used to pay the purchase price of labor and materials used to construct the residence on said land. 11. Defendant Bank of America looked primarily to the land and to the building thereon as security for its loan.

"12. Said land, without the improvements [constructed] thereon, had a value of $7,500. 13. After the construction of said improvements, said land had a fair market value of $96,000. 14. Upon completion of the construction of the dwelling, it was occupied by plaintiffs and used by them as their place of residence. 15. In April, 1967, a major landslide occurred in the area of the residence. As a result of the damage done to the residence and to the real property itself, the residence was torn down and demolished.

"16. Defendant Bank of America required that plaintiffs have a policy of insurance on the land and improvements with a lender's loss payable endorsement.[4] 17. Plaintiffs obtained said policy of insurance but it did not cover them or defendant Bank of America against the risk of a landslide. 18. No insurance which would cover said risk was available to the parties. 19. To the extent of the unpaid balance of its loan to plaintiffs,

---

[4]This finding refers to language, in the deed of trust mentioned in finding no. 3, which provided in pertinent part as follows:

"To PROTECT THE PROPERTY AND SECURITY GRANTED BY THIS DEED OF TRUST, TRUSTOR [plaintiffs] AGREES: (a) . . . to provide and maintain fire (and if required by Beneficiary [defendant bank], earthquake and other) insurance satisfactory to and with loss payable solely to Beneficiary . . ."

. . . [defendant bank] . . . is subrogated to plaintiffs' claims against any other party for damages suffered by reason of the destruction of their residence."[5]

In the declaratory judgment entered pursuant to the above-quoted findings, the trial court ordered that defendant bank was *not* entitled to recover a deficiency judgment from plaintiffs. The court unmistakably determined that a deficiency judgment was barred, under the facts as found, by the provisions of section 580b.[6] Upon examination of the facts in light of the language of the statute as amended in 1963 (see fn. 1, *ante*), we agree: for the reasons next stated, we affirm the declaratory judgment.

On their appeal from the declaratory judgment, defendants first contend that section 580b does not bar a deficiency judgment in this case because the deed of trust given by plaintiffs was not a "purchase money" instrument "within the meaning" of the statute. (See fn. 1, *ante*.) The contention rests upon the premises (1) that section 580b operates to bar a deficiency judgment after the sale of real property under a "purchase money" mortgage or trust deed only, and (2) that plaintiffs' trust deed was not a "purchase money" instrument because it was given to secure payment of a construction loan whose proceeds financed the residential improvement of their property but not its "purchase."

Defendants' first premise is undeniably correct: section 580b has consistently been interpreted as barring "any deficiency judgment after sale under a purchase money mortgage or trust deed" only. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 41 [27 Cal.Rptr. 873, 378 P.2d 97]. Cf. Riesenfeld, *California Legislation Curbing Deficiency Judgments* (1960) 48 Cal.L.Rev. 705, 711; Cal. Land Security and Development (Cont. Ed.Bar 1960) § 16.8, p. 395; Hetland, Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) [hereinafter cited as "Hetland"] § 6.21, p. 265.)

The validity of defendants' second premise—that plaintiffs' trust deed

---

[5]There was evidence (and the parties in effect stipulated) at the trial that plaintiffs had at least one action pending, against other parties, for damages caused by the landslide mentioned in finding no. 15.

[6]The trial judge said as much in a "Memorandum of Decision," in which he stated, in pertinent part, "[t]hat a construction loan intended by the parties to be used as in the instant case, i.e., for construction of a dwelling for use by the borrower, falls within the anti-deficiency protection afforded by C.C.P. 580b, and the rights and duties of the parties are determined accordingly."

We have resorted to the "Memorandum of Decision," as we may do, "for the purpose of discovering the process by which . . . [the trial judge] . . . arrived at his conclusion." (*Henderson* v. *Fisher* (1965) 236 Cal.App.2d 468, 472 [46 Cal.Rptr. 173]. Cf. 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 230, pp. 4220-4221.)

is not a purchase money instrument within the meaning of section 580b because it was given to secure payment of a construction loan only—requires analysis of the language of the 1963 amendment of the statute (see fn. 1, *ante*) according to the conventional canons of statutory construction. " 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations omitted.] Statutes should be construed so as to be given a reasonable result consistent with the legislative purpose." (*People* v. *Superior Court* (1969) 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230].) Moreover, ". . . a statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts . . . ." (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].) We are to construe the *express language* of a statute "according to the usual, ordinary import" of the words employed (*ibid.*), but "in context, keeping in mind the nature and obvious purpose of the statute." (*People* v. *Superior Court, supra,* at p. 133.)

Applying these rules in the interpretation of section 580b in particular (or of any of the other components of the "entire statutory system" of anti-deficiency legislation which includes it),[7] we must also recognize that the "system" has been liberally construed to effectuate the specific legislative purpose behind it. As one writer has stated, ". . . the courts have exhibited a very hospitable attitude toward the legislative policy underlying the anti-deficiency legislation and have given it a broad and liberal construction that often goes beyond the narrow bounds of the statutory language." (Riesenfeld, *op. cit. supra,* 48 Cal.L.Rev. 705 at p. 709.)

Because the Legislature's "purpose" in adopting the 1963 amendment of section 580b is the paramount consideration in our construction of the language employed in it, we first resort to the history of the statute which preceded it. At all times prior to the amendment (and without reference to the language which was added to the statute by earlier amendments and which is not relevant here), section 580b expressly barred a deficiency judgment only after a sale under a mortgage or trust deed "given

---

[7]The "entire statutory system" curbing deficiency judgments in cases involving land-secured obligations includes, at least, Code of Civil Procedure section 726 (the "one form of action" statute); section 580a (which, alone or in combination with section 726, limits a creditor's judgment to the difference between the fair value of the affected property and the amount of the obligation secured); section 580d, which bars a deficiency judgment if the creditor's secured interest is foreclosed by sale under a power contained in the governing security instrument (see fn. 2, *ante*); and section 580b. (See Riesenfeld, *op. cit. supra,* 48 Cal.L.Rev. 705 at p. 709; Hetland, *op. cit. supra,* § 6.1, pp. 233-234.)

. . . to secure payment of the balance of the purchase price of real property." (See fn. 1, *ante.*) The just-quoted language clearly limited the definition of a "purchase money instrument," a sale under which would bar a deficiency judgment according to the statute's terms, to a mortgage or trust deed given by a *vendee* of the affected real property, for the security purpose expressly stated, because a vendee is ordinarily the person who is obligated to pay "the balance of the purchase price of [the affected] real property." Because a landowner who borrows construction money is not obligating himself to pay any part of "the purchase price of [his] real property," the same language imported that a mortgage or trust deed given to secure payment of the loan was not a "purchase money instrument" which would invoke the anti-deficiency protection of the statute.

By reason of the pre-1963 language mentioned, the principal decisions which dealt with it involved trust deeds which had been given by *vendees* "to secure payment of the balance of the purchase price of real property." (See, e.g., *Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 207-209 [114 P.2d 592]; *Brown* v. *Jensen* (1953) 41 Cal.2d 193, 194-196, 197-198 [259 P.2d 425]; *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35 at p. 41; *Bargioni* v. *Hill* (1963) 59 Cal.2d 121, 122-124 [28 Cal.Rptr. 321, 378 P.2d 593].) In the one decision cited herein which involved a sale of property under an instrument given to secure payment of a "construction loan," by persons who owned the property but were not its vendees (and at a time when the same pre-1963 language of section 580b controlled the transaction), it was held that the statute did not bar a deficiency judgment against their successors because the construction borrowers had not been "purchase money trustors" when the transaction was executed. (*Paramount Sav. & Loan Assn.* v. *Barber* (1968) 263 Cal. App.2d 166, 167-169 [69 Cal.Rptr. 390].)[8]

In the *Roseleaf* case (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35), the question was whether certain trust deeds which had been given by one of several vendees of a hotel, for the literal purpose of securing "payment of the balance of the purchase price" thereof, were purchase money instruments which entitled him to the anti-deficiency protection of

---

[8]Defendants place principal reliance upon the *Paramount* decision in support of their argument that plaintiffs' deed of trust was not a "purchase money instrument" which invokes the anti-deficiency protection of section 580b, as amended, because it was given to secure payment of a "construction loan" only. Although the *Paramount* court used language which referred to the 1963 amendment of the statute in terms of the effect argued by defendants, the decision clearly rests upon the pre-amendment wording of the statute (*Paramount Sav. & Loan Assn.* v. *Barber, supra,* at p. 169), and it is not "determinative" of the question presented here. (Hetland, *op. cit. supra,* § 6.43, p. 301.)

section 580b as it read prior to the 1963 amendment. The Supreme Court first held that whether a given mortgage or trust deed was a purchase money instrument within the meaning of the statute depended upon whether it comported with the statute's purpose, stating: "Section 580b was apparently drafted in contemplation of the standard purchase money mortgage transaction, in which the *vendor* of real property retains an interest in the land sold to secure payment of part of the purchase price. *Variations on the standard are subject to section 580b only if they come within the purpose of that section.*" (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35 at p. 41, italics added.)

After summarizing and discarding "[v]arious purposes . . . [which had] . . . been ascribed to section 580b," the *Roseleaf* court next defined the statute's purposes in this language: *"Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security.* Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citation.] *If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales."* (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35 at p. 42, italics added.) The court concluded by holding that the trust deeds before it were not purchase money instruments within the meaning of the pre-1963 statute, and that the latter did not protect the trustor-vendee against a deficiency judgment, because there was no evidence that the hotel had been overvalued when he bought it and executed the instruments to secure payment of its purchase price. (*Id.* at pp. 42-43.)

In the *Bargioni* case (*Bargioni* v. *Hill, supra,* 59 Cal.2d 121), the Supreme Court reiterated its *Roseleaf* reasoning as the basis for holding, for the first time since the original enactment of section 580b (see Hetland, *op. cit. supra,* § 6.24, p. 271), that a mortgage or trust deed given by a vendee of real property, but to a third party lender rather than to the property's vendor, was a purchase money instrument which operated to bar a deficiency judgment under the pre-1963 statute.[9] The court stated: *"This section compels a purchase money mortgagee to assume the risk*

---

[9] *Bargioni* was decided three weeks after *Roseleaf.* (See *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 35 ["January 22, 1963"]; *Bargioni* v. *Hill, supra,* 59 Cal.2d at p. 121 ["February 14, 1963"]. See also *Spangler* v. *Memel* (1972) 7 Cal.3d 603, 610 [102 Cal.Rptr. 807, 498 P.2d 1055].)

*that the security is inadequate. The purposes are to discourage land sales that are unsound because the land is overvalued and, in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability.* (See *Roseleaf Corp.* v. *Chierighino, ante,* pp. 35, 42.) These purposes are served by relieving the purchaser of personal liability to any person who finances the purchase and takes as security a trust deed or mortgage on the property purchased, provided the financier intended the loan to be used to pay all or part of the purchase price. [Citation.]" (*Bargioni* v. *Hill, supra,* at p. 123, italics added.)

In the 1963 amendment of section 580b, the Legislature first provided that a deficiency judgment would not lie after a sale under a deed of trust or mortgage given *to a vendor* "to secure payment of the balance of the purchase price of real property." (See fn. 1, *ante.*) This wording reiterated the narrow language of the pre-1963 statute which necessarily limited the definition of a "purchase money instrument," which would invoke the statutory bar, to one given for the quoted purpose if it had been given to the *vendor* of the affected property. According to this portion of the amendment, the statute remains within the *Roseleaf* court's concept that it was "drafted in contemplation of the standard purchase money mortgage transaction, in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price." (*Roseleaf Corp.* v. *Chierighino,* quoted *supra,* 59 Cal.2d 35 at p. 41.)

The second portion of the 1963 amendment provides that a deficiency judgment is barred, after sale under a deed of trust or mortgage given "on a dwelling," if the "dwelling" meets a specific description and if the instrument had been given to a "lender" (as distinguished from a "vendor") "to secure repayment of a loan which was in fact used to pay all or part of the *purchase price* of such dwelling occupied . . . by the *purchaser.*"[10] (Italics added.) Because this language refers to a "lender," and departs from the pre-1963 wording of the statute by referring to the "purchase price of . . . [a] . . . dwelling," instead of the "purchase price of real property," the anti-deficiency protection of the amended statute is no longer limited to the narrow bounds of the "standard purchase money transaction," and the retention of a security interest by the *vendor* of "land

---

[10]By reason of the net effect of the first and second portions of the 1963 amendment, section 580b now protects "purchasers" of designated residential property from all lenders and protects "purchasers" of commercial property only from the vendor thereof. (Hetland, *op. cit. supra,* § 6.24, pp. 272-273. See *Kistler* v. *Vasi* (1969) 71 Cal.2d 261, 263 [78 Cal.Rptr. 170, 455 P.2d 106]; *Spangler* v. *Memel, supra,* 7 Cal.3d 603 at p. 614 [fn. 8].)

sold," as discussed in the *Roseleaf* decision. (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35 at p. 41.) On the other hand, it appears that the broader language of the second portion of the amendment bars a deficiency judgment in contemplation of another "standard" transaction in which a third party lender finances the "purchase price" of a described "dwelling" and receives from the "purchaser" a mortgage or trust deed to secure payment of his loan. The final question in the present case is whether the broader language should be interpreted to bar a deficiency judgment after a sale "under a deed of trust [plaintiffs'] . . . given to a lender [defendant bank] to secure repayment of a loan which was in fact used to pay all or part" of the *cost of constructing* plaintiffs' "dwelling occupied . . ." by the borrower(s) (plaintiffs).[11]

The common—and various—definitions of the words "purchase" and "purchaser" are sufficiently flexible to include the suggested alternative meanings (see, e.g., Webster's Third New Internat. Dict. (1967) pp. 1844-1845);[12] the owner of real property who finances and builds a "dwelling" on it "acquires" or "obtains" the dwelling for a "price," in no less a sense than the "purchaser" of real property "acquires" or "obtains" the land itself. (See fn. 12, *ante.*) The flexibility of both definitions has been recognized in pertinent decisions. (See, e.g., *People* v. *Superior Court* (1937) 10 Cal.2d 288, 294 [73 P.2d 1221] ["purchase"]; *Andersen* v. *La Rinconada Country Club* (1935) 4 Cal.App.2d 197, 200 [40 P.2d 571] ["purchase"]; *Roach* v. *Riverside Water Co.* (1887) 74 Cal. 263, 265 [15 P. 776] ["purchaser"].) Thus, the terms actually used by the Legislature in the 1963 amendment ("purchase price" and "purchaser") may reasonably be assigned the suggested alternative definitions "according to the usual, ordinary import" of the statutory language. (*Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907 at p. 918.) The reach of that language is therefore to be assessed according to a liberal construction thereof in light of the legislative purpose underlying the amended statute and the "entire statutory system" of anti-deficiency legislation which includes it.

---

[11]It is undisputed that the present transaction otherwise fell within the amending language of the statute: plaintiffs' deed of trust was "given to a lender [defendant bank] to secure repayment of a loan which was in fact used to pay all or part" of the cost of constructing their single-family residence, and they occupied the residence "entirely" upon its completion. (See the trial court's findings 8, 9 and 14, quoted *supra.*)

[12]Page 1844: "purchase . . . : . . . a: . . . gain, acquire . . . b: to acquire (real estate) by any means other than descent or inheritance . . . d: . . . : buy for a price . . . e: to obtain (something desired) by an outlay . . ."

Page 1845: "purchaser: one that purchases; as . . . b: one that acquires an estate in lands by his own act or agreement or takes or obtains an estate by any means other than by descent or inheritance c(1): one that acquires property for a consideration . . ."

(*Ibid., People* v. *Superior Court, supra,* 70 Cal.2d 123 at pp. 132-133; Riesenfeld, *op. cit. supra,* 48 Cal.L.Rev. 705 at p. 709.)

Despite the operation of the 1963 amendment to eliminate the anti-deficiency protection previously afforded the purchaser of commerical property against a third party lender (see fn. 10, *ante*), under the pre-1963 language of the statute and under the *Bargioni* decision (*Bargioni* v. *Hill, supra,* 59 Cal.2d 121 at p. 123), it appears that the amendment was adopted in direct response to *Bargioni* (Hetland, *op. cit. supra,* § 6.24, p. 272),[13] and that the Legislature thereby codified that decision to the extent of continuing the protection extended, against third party lenders, to the limited class of residential purchaser-borrowers described in the amendment. Although decided upon inapposite facts, at least one recent decision clearly indicates that the *Roseleaf-Bargioni* definition of the statute's purposes survived the 1963 amendment. (*Spangler* v. *Memel, supra,* 7 Cal.3d 603 at p. 610.)

As stated in *Bargioni,* "[t]he purposes [of section 580b] are [1] to discourage land sales that are unsound because the land is overvalued and [2], in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability." (*Bargioni* v. *Hill, supra,* 59 Cal.2d 121 at p. 123 [citing *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35 at p. 42].) The first purpose is served by application of the amended statute's anti-deficiency protection to residential construction borrowers who fall within its terms (see fn. 11, *ante*): it thus tends to discourage construction borrowing which is "unsound" because the financed construction is overvalued.

The amended statute's application to residential construction borrowers also serves its second purpose, which contemplates "depression in land values" and "aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability." We perceive no real distinction between the present situation, where the value of the security has been diminished by a natural disaster, and a case where

---

[13]This statement is substantiated by the coincidence in timing between the *Bargioni* decision and the legislation which enacted the 1963 amendment. *Bargioni* having been decided on February 14, 1963 (see fn. 7, *ante*), it became final on or about March 16. (Rule 24, Cal. Rules of Court.) The amending legislation (Senate Bill 1432, 1963 Reg. Sess.) was introduced on April 25, ran its course with one amendment which is not pertinent here, was approved by the Governor on July 23, and took effect in September, 1963. (Final Calendar of Legislative Business, 1963 Reg. Sess., p. 410 [relative to Sen. Bill 1432]; Assem. Jour. (1963 Reg. Sess.), p. 5659 [relative to the amendment mentioned]; Stats. 1963, ch. 2158, p. 4500; *Paramount Sav. & Loan Assn.* v. *Barber, supra,* 263 Cal.App.2d 166 p. 168.)

the same result has occurred by reason of cyclical economic decline: the spirit of the statute is to protect the borrower against the "aggravation" of any such "downturn," and the *Roseleaf* and *Bargioni* courts both held that its effect is to impose the "risk" of inadequate security upon the secured lender rather than upon the borrower. (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35 at p. 42; *Bargioni* v. *Hill, supra,* 59 Cal.2d 121 at p. 123.)

In the present case, it seems particularly appropriate that the "risk," and the ensuing loss in consequence, be borne by defendant bank because of the opportunities it had—and utilized—to protect its security interest against the landslide loss which actually occurred. These opportunities included the control exercised by the bank over the plans, specifications and construction of plaintiffs' residence in contemplation of landslide and other physical risks (see fn. 3, *ante*), and the requirement in plaintiffs' trust deed that they furnish insurance whose coverage protected the bank against loss and which was "satisfactory" to it. (See fn. 4, *ante,* and the trial court's findings 16, 17 and 18, quoted *supra*.) We may reasonably assume that such protective measures are readily available to lenders who finance residential construction, that the Legislature was aware of this when it amended section 580b in 1963, and that its protection of residential construction borrowers, against deficiency judgments, was continued (under the 1963 amendment) in recognition of the fact that the lenders involved are able to protect themselves against loss or devaluation of their security which might be caused by physical catastrophe. Under these and all the circumstances previously discussed, we hold that section 580b bars a deficiency judgment in the present case.

Citing *Morgan* v. *Reasor Corp.* (1968) 69 Cal.2d 881 [73 Cal.Rptr. 398, 447 P.2d 638], defendants further argue that a deficiency judgment is recoverable here because plaintiffs' construction loan was made for the purpose of financing the "purchase of personal property and services rather than real property." This contention rests upon the premise that the building materials purchased with the loan's proceeds were "personal property" when they were bought, and that they did not become "real property" until after the "construction services" had converted them into real property in the form of the residence built upon plaintiffs' land. There is language in the *Morgan* decision which supports this argument in principle: dealing with a contract for the construction of a residence, and stating that "whether the property acquired is real or personal must be fixed not as of the date of the completion of the contract, but as of the date of the execution of the contract," the *Morgan* court held that building materials acquired by the homebuilder under the construction contract were "goods"

within the meaning of the Unruh Act (Civ. Code, § 1801 et seq.) so as to invoke the act's protection against provisions of the contract which violated it in various respects pertaining to the sale of "goods" on credit. (*Morgan* v. *Reasor Corp., supra,* at pp. 885-888.)

*Morgan,* however, has been expressly overruled, as to construction contracts, by a subsequent legislative enactment which excludes such contracts from application of the Unruh Act (Civ. Code, § 1801.4 [added by Stats. 1969, ch. 554, § 1, p. 1180]. See Hetland, *op. cit. supra,* § 6.44, p. 304.) If its reasoning survives, moreover, its application in a section 580b case is controlled by the latter statute. It is undisputed that any *personal* property acquired by plaintiffs under the contract for the construction of their residence had become *real* property upon the completion of the contracted work. (See Civ. Code, § 658, subd. 2; *Krouser* v. *County of San Bernardino* (1947) 29 Cal.2d 766, 769 [178 P.2d 441].) Both before and after its amendment in 1963, section 580b has barred a deficiency judgment "after any sale of *real property* . . ." (see its successive text as quoted in fn. 1, *ante* [italics added here]); such judgment will therefore be barred after the sale contemplated in the declaratory judgment under review. The critical fact here is not (as it was in *Morgan*) that the character of the property purchased under a construction *contract* is to be determined at the time of execution thereof (*Morgan* v. *Reasor Corp., supra,* 69 Cal.2d 881 at pp. 887-888); it is whether the parties to the construction *loan* intended that the deed of trust, securing the loan's payment, cover *real property.* The trial court having expressly found that the present parties so intended (see its findings 7, 8 and 10, quoted *supra*), the *Morgan* distinction between real and personal property does not apply here.

The judgment is affirmed.

Devine, J.,* and Bray, J.,* concurred.

A petition for a rehearing was denied March 20, 1974, and appellants' petition for a hearing by the Supreme Court was denied April 17, 1974. Burke, J., and Clark, J., were of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.