JOHN K. McNULTY AND BABETTE BARTON McNULTY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McNulty v. Commissioner
Docket No. 2182-84.
United States Tax Court
T.C. Memo 1988-274; 1988 Tax Ct. Memo LEXIS 311; 55 T.C.M. (CCH) 1138; T.C.M. (RIA) 88274; June 27, 1988. John K. McNulty and Babette B. McNulty, pro se. Daniel P. Ramthun, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: By notice of deficiency, respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $ 8,082.92. The deficiency was due to respondent's adjustment to the capital gain reported by petitioners on the sale of petitioner Babette Barton McNulty (Babette) to petitioner John K. McNulty (John) of a one-half interest in their current residence. The issues for decision are: (1) whether Babette's *312 basis in the one-half interest sold to John was $ 71,500 or $ 91,000; and (2) whether Babette must use the full selling price of $ 120,000 as the amount realized from her sale of the one-half interest to John, or only the $ 102,525 actually received from him in cash and property in the year of sale. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with related exhibits, are incorporated herein by this reference. Petitioners are professors of tax law at the University of California at Berkeley. At the time the petition in this case was filed, they resided in Berkeley, Calif.
Petitioners were married on March 23, 1978. Prior to that time, Babette was married to Robert Barton (Robert). Their divorce was granted on March 15, 1978. At the time of their divorce, Babette and Robert each owned an undivided one-half community property interest in the residence located at 620 Spruce Street, Berkeley, Calif. ("the residence"). Babette and Robert's total adjusted basis (original cost adjusted by improvements and a previously deferred gain) in the residence was $ 104,000. The residence was valued at $ 240,000 for purposes *313 of the marital settlement agreement. Babette and Robert's property settlement agreement was not yet final at the time of their divorce. When Babette married John, it was agreed that they would live in the residence, as long as she became the owner of the entire house and he bought a half interest for $ 120,000, half the appraised value. This transaction could not be completed at that time for several reasons. First, John had a house of his own to sell before he could pay for half of the residence. It took him longer than he anticipated to find a buyer. Second, Babette and Robert's settlement agreement was still being negotiated. In January of 1979, John sold his former home. He now had cash available to buy his half of the residence, and intended to defer his gain on the sale of his former home. [1] Since Babette and Robert's settlement agreement was still not final, it was as yet undetermined who owned the residence, or in what proportions each owned it, and John could not go ahead with the purchase. He intended, however, to purchase half of the residence within 18 months of the sale of his former residence, in order to receive the nonrecognition benefits of section 1034. *314 [2] He began to make a series of advances or loans to Babette to enable her to purchase Robert's interest in the residence. On January 19, 1979, John transferred $ 10,000 to Babette and on May 31, 1979, he transferred $ 25,000 to her. On May 17, 1979, he paid $ 1,900 to Calvert Gallery for an oriental rug for Babette, and another $ 1,900 to Calvert Gallery on June 1, 1979. To reflect these payments, Babette executed two promissory notes on May 31, 1979, in the amounts of $ 29,000 and $ 10,000. On October 2, 1979, Babette and Robert signed a note promising to pay $ 63,075 to John within 60 days. The note was secured by a deed of trust, also signed by Babette and Robert on October 2, 1979, granting John a security interest in the residence. On October 3, 1979, John advanced $ 63,075 to Babette *315 and Robert. On that same day, Robert deeded his undivided half interest in the residence to Babette. Babette deeded an undivided half interest in the residence to John on April 1, 1980, at which time he discharged the promissory notes for $ 29,000 and $ 10,000 and wrote that they were credited toward the $ 120,000 purchase price of the residence. He also wrote "paid in full" on the note secured by the deed of trust. John's payments which were credited toward the purchase price totalled $ 101,900. [3] He and Babette agreed that he would pay the remaining $ 18,100 due by paying half of the monthly mortgage payments. An undated receipt signed by Babette incorporated these terms and read as follows: The undersigned hereby acknowledges receipt, or payment for her account, of $ 101,900, from John K. McNulty ("Payor") as partial payment for an undivided one-half interest in the home commonly known as 620 Spruce St., Berkeley, California (94707), sold by the undersigned to Payor for a total purchase price of $ 120,000, the Payor having agreed to take said interest in the property subject to an outstanding mortgage balance of $ 18,100, and to pay (as the balance of the purchase price) *316 one half of the total balance of $ 36,200 constituting a first mortgage lien on the entire premises. The mortgage had been obtained by Babette and Robert in the amount of $ 45,000 in 1969 following the construction of the residence, as a means of paying off the construction loan. As of April 1, 1980, when Babette deeded John an undivided half interest in the property, there was a mortgage balance of $ 36,200. The mortgage was left in Babette and Robert's names, because a refinancing in order to substitute John as co-obligor would have resulted in a less favorable interest rate. John paid half of the mortgage monthly, and, as of December 31, 1980, a balance of $ 34,950 remained. Babette and Robert's property settlement was finalized on December 1, 1980. The delay was due to the problem of valuing their joint law practice. Page 1 of the Marital Settlement Agreement states that the parties endeavored to make an equal division of their community property which would result in no taxable transfer by either. For purposes of the property *317 settlement, the residence was valued at $ 240,000 and the law practice at $ 60,000. Babette was given 70 percent of the residence. Robert was given the law practice and 30 percent of the residence. Babette then paid Robert for his 30 percent of the residence and agreed to hold him harmless on the mortgage, which was still in both their names. The settlement agreement was incorporated into the Final Judgment of Dissolution of Marriage and was entered nunc pro tunc as of March 15, 1978. On their joint return for 1980, petitioners reported a gain of $ 28,012.50 from Babette's sale to John of one-half of the residence. In computing this gain, petitioners used $ 91,987.50 as Babette's basis, representing her partial cost-partial carryover basis in the half she obtained from Robert, and used $ 120,000 as the selling price of the residence. Petitioners reported $ 17,475 of the gain as "deferred." This amount was arrived at by subtracting $ 102,525, John's actual cash payments during 1980, from the $ 120,000 selling price. In his notice of deficiency, respondent increased the capital gain from the sale of the one-half interest in the residence. He used $ 71,887.50 as Babette's basis, *318 calculated as half of her total basis in the house: 1.  Carryover Community Basis:
(A)   Original cost
$  97,550.00 (B)   Improvements
10,250.00 (C)   Less: Gain deferred on
sale of prior residence
(3,800.00)
Total community basis
104,000.00 One-half community share
$  52,000.00
2.  Basis of one-half Interest Acquired    in Division of Marital Property:
(A)   Adjusted basis of
community property given
up in exchange for the
interest acquired
2,500.00 (B)   Assumption of mortgage
liability
18,500.00 (C)   Cash and equivalent paid
69,000.00 90,000.00
Total
142,000.00
Add: Subsequent improvements
1,775.00
Total Adjusted basis
143,775.00
Basis of one-half interest sold
71,887.50
Respondent calculated the gain on sale based on a selling price of $ 120,000, with no gain deferred. In their stipulation, the parties have made compromises as to the figures used in their calculations. They have *319 agreed that Babette's basis in the one-half interest she acquired from Robert was $ 91,000 and that half of her basis in the entire residence would be $ 71,500. OPINION 1. Basis
Respondent's determination is based on one of his revenue rulings, Rev. Rul. 67-309, 1967-2 C.B. 263. In that ruling, respondent stated his position that where a taxpayer owning an undivided one-half interest in property purchases the other undivided half interest, and subsequently sells an undivided one-half interest in the property, the taxpayer is viewed as having sold an equal percentage of each undivided segment. His basis in the one-half sold is therefore one half of his basis in the entire property. Accordingly, respondent determined that Babette sold John an undivided half and her basis in that half was half of her basis in the entire property. Petitioners take the position that Babette acquired Robert's interest in the house for the purpose of selling it to John, and was merely a conduit or agent for John. They argue that she should therefore be able to "trace" the basis of the interest sold to John. Petitioners' theory is largely based on an implied exception to Rev. Rul. 67-309. *320 Petitioners rely on the following sentence, found in the statement of facts in the revenue ruling: The taxpayer was not acting as an agent of the [purchaser], nor was he operating in any kind of situation where he was a mere conduit, when he purchased [the] undivided segment * * *. In response to petitioners' claims that Babette was merely a conduit or agent, respondent argues that this has not been established, and that petitioners are bound by the form of the transaction as they structured it. Furthermore, respondent notes that a true conduit or agent would recognize no gain or loss on the transaction, and not just trace the basis of the interest sold. For the reasons discussed below, we agree with respondent. Petitioners have the burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Petitioners have not shown that Babette was acting as a conduit or agent for John. Moreover, had she been a true agent or conduit, the tax consequences would have been vastly different to the parties, and the evidence shows that such consequences were clearly not intended by the parties in structuring this transaction. In support of their conduit theory, *321 petitioners have stressed the following facts: (1) Babette bought Robert's interest in the house, and resold it to John, to avoid a situation in which John and Robert would have to deal face-to-face with one another; (2) John would have bought the interest immediately following the sale of his former residence, but since the property settlement was not worked out no one knew whom John would be paying or buying from; (3) John instead loaned substantial amounts to Babette and Robert, receiving promissory notes and later a security interest, and those amounts were later credited toward his payment for the property; (4) Babette was worried that John might not be able to consummate the purchase within 18 months of the sale of his former home, so as to roll over the gain, and thus had Robert deed the interest to her prior to the finalizing of the settlement agreement, and (5) she subsequently deeded that interest to John. While we are reluctant to question the veracity of petitioners' assertions with regard to their intent, we feel obliged to point out several discrepancies in their version of the transaction. First, petitioners testified that the parties' relationship was amicable and *322 that Robert had agreed that Babette and John would live in the residence, and that John would pay for half. Robert accepted John's payment of $ 63,075 in October of 1979, and granted him a security interest in the residence. Yet, Babette insists that she bought the house from Robert merely to avoid direct dealing between Robert and John. The evidence presented at trial did not suggest that any such direct dealings would have presented the parties with any problems. Second, petitioners claim John could not actually buy the interest until the settlement agreement was final, so that he knew whom he was buying from. Yet, Robert deeded the interest to Babette 14 months before the agreement was final, and Babette deeded the interest to John 8 months before the agreement was final. Moreover, it is clear that the parties intended the agreement to award the residence to Babette, or else they would not have had Robert deed his half to Babette at that time. Petitioners claim that all these transfers took place prior to the final property settlement because of John's need to roll over his gain into a new principal residence within 18 months of the sale of his former home. However, that *323 does not explain why Robert had to deed the interest to Babette only 9 months after John sold his home. In addition, if the parties were in such a hurry, it is unclear why Babette then waited 6 months to deed the interest to John. [4]
Finally, petitioners continually claim that no matter how structured, the "substance" of the transaction was that Babette acted as a conduit. This is negated by the fact that she took title in her own name, and then waited 6 months before deeding the one-half interest to John. During that time, she was the owner, *324 and could have disposed of the residence as she pleased. We accept petitioners' testimony that John intended to buy half of the residence. It is clear, however, that John would buy his interest from Babette, who would receive Robert's interest as part of the property settlement. The loans or advances made by John were payments to Babette, or on her account, to facilitate her purchase from Robert. Once she had the entire interest, she would "sell" him an undivided half by having him cancel her obligation on the notes. [5] This was the form chosen by the parties. They now seek to deny that form, and to argue that the substance was otherwise. In appropriate circumstances, a court will ignore the form of the transaction and tax the transaction *325 according to its substance. See, e.g., Gregory v. Helvering,293 U.S. 465 (1935). It is usually respondent who argues "substance over form." It is more difficult, however, for the taxpayers to ignore the form they themselves chose for the transaction. Coleman v. Commission,87 T.C. 178, 202 (1986); affd. without published opinion 833 F.2d 303 (3d Cir. 1987); Bolzer v. Commissioner,59 T.C. 760, 767 n. 4 (1973). This is particularly true in this case, where we find the parties clearly intended the form they chose, and where that form had an obvious tax purpose: Babette would receive the residence in a property settlement agreement, in a tax-free division of community property. This purpose is clearly stated in the settlement agreement. The Supreme Court has repeatedly stated that while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not. Commissioner v. National Alfalfa Dehydrating & Milling Co.,417 U.S. 134, 149 (1974); *326 Higgins v. Smith,308 U.S. 473, 477 (1940); Old Mission Portland Cement Co. v. Helvering,293 U.S. 289, 293 (1934). In this case, the parties structured the transaction so that Babette took title to the whole property and then six months later sold John an undivided half interest. The form chosen belies any intent to use Babette as a conduit or agent for John. See Diamond v. Commissioner,56 T.C. 530 (1971), affd. 492 F.2d 286 (7th Cir. 1974). [6] Petitioners are bound by the form they chose, and must accept the tax consequences.
Moreover, Babette's and John's reporting of the sale does no comport with their "conduit or agent" theory. Had Babette been a true conduit or agent, she would not have been considered the owner of Robert's interest at all, and would have had no gain, or even any sale, to report. Robert would be deemed to have sold the half interest to John. See Commissioner v. Bollinger,    U.S.    (1988); *327 Commissioner v. Court Holding Co.,324 U.S. 331 (1945). This was clearly not the intent of Robert and Babette in their settlement agreement. The language regarding "conduit or agent" in Rev. Rul. 67-309, on which petitioners rely, refers to the fact that a conduit or agent would have no gain on sale. It does not support petitioners' theory that if Babette was a conduit or agent she could trace the basis of the undivided portion sold. While we are of course not bound by respondent's revenue ruling, Crow v. Commissioner,85 T.C. 376, 389 (1985), we note that it reaches the correct result and that it is on all fours with this case. A taxpayer who owns two undivided one-half interests in property, received at different times, and disposes of an undivided one-half interest, is deemed to have disposed of 50 percent of each of the halves he owned. Porter v. United States,738 F.2d 731 (6th Cir. 1984). Respondent's determination as to Babette's basis in the one-half sold to John is thus correct. She is deemed to have sold an *328 interest in which her basis was $ 71,500. 2. Amount Realized
Respondent determined that Babette realized the full selling price of $ 120,000 in 1980. Petitioners argue that Babette's amount realized was $ 102,525, consisting of the $ 101,900 John had already paid before transfer of the deed, and the additional amount he paid in monthly mortgage payments in 1980. Petitioners' position is that Babette did not realize the balance of the $ 120,000 selling price in 1980, because those amounts were deferred payments and John's promise to pay was unenforceable. Respondent argues that John either agreed to pay half of the mortgage or took the property subject to the mortgage, and therefore section 1.1001-2, Income Tax Regs., includes the amount of the mortgage in the amount realized on sale. Petitioners counter that the regulation is inapposite to this case, because John did not agree to pay the mortgage, and, in any event, Babette was not relieved of her obligation on the mortgage as a result of her sale to John. We agree with respondent. John agreed to pay half of the remaining mortgage payments as the means of paying off the remainder of the *329 selling price. Pursuant to section 1001(b) and section 1.1001-2, Income Tax Regs., one-half of the amount of the mortgage must be included in Babette's amount realized from the sale in 1980. Section 1001(b) provides that the amount realized from the sale of property, upon which gain or loss is computed, is "the sum of any money received plus the fair market value of the property (other than money) received." Section 1.1001-2(a)(1), Income Tax Regs., provides that the amount realized from a sale of property includes the amount of liabilities from which the transferor is discharged as a result of the sale. Section 1.1001-2(a)(4), Income Tax Regs., provides special rules in which a seller is "deemed" to be discharged under certain circumstances, as follows: (i) The sale or disposition of property that secures a nonrecourse liability discharges the transferor from the liability; (ii) The sale or other disposition of property that secures a recourse liability discharges the transferor from the liability *330 if another person agrees to pay the liability (whether or not the transferor is in fact released from liability). * * * The parties dispute whether the mortgage in question was recourse or nonrecourse under California law. [7] We find it unnecessary to determine whether the mortgage was a recourse or nonrecourse liability, because in either event we would hold that Babette was deemed discharged of one-half of the mortgage pursuant to the above regulation. The receipt signed by Babette for partial payment by John clearly *331 states that John took the interest subject to the mortgage and agreed to pay half of the mortgage balance. We accept this receipt as a memorial of the agreement. In addition, petitioners' testimony bears out that John agreed to take over half of Babette's mortgage payments. [8]
On brief, petitioners dispute this, and claim that John made only an oral, unenforceable promise to make future payments. They further claim that his promise to pay had no value since it was not reduced to a negotiable instrument. We reject these contentions. John did not merely promise to pay $ 18,100 to Babette in the future; he agreed to pay half of the mortgage on their residence. Petitioners have not proven that his promise was valueless or uncollectible, and the burden of proof is upon them on this issue. Further, the fact that the agreement was not reduced to a negotiable instrument merely suggests the absence of an arm's-length relationship between the parties. Babette sold John an *332 undivided half-interest in the residence subject to an existing mortgage, and he agreed to pay half of the monthly payments. Thus, whether or not the mortgage was recourse or nonrecourse, she is deemed to be discharged of the liability under section 1.1001-2, Income Tax Regs., and realizes the amount so discharged. Although Babette in fact remains liable, the regulation specifically states that this is irrelevant. On brief, petitioners argue that if this regulation does apply to include half of the mortgage into Babette's amount realized when she is not discharged of the liability, then it is invalid. The principles reflected in the regulation were set forth by the Supreme Court in Crane v. Commissioner,331 U.S. 1 (1947), see also Commissioner v. Tufts,461 U.S. 300 (1983), and are consistent with section 1001(b). We decline to hold that any part of this regulation is invalid. We are not convinced that petitioners' sale falls outside the transactions described in section 1.1001-2, Income Tax Regs. Babette's sale to John resulted in her discharge of half of her mortgage liability remaining *333 on the residence. Therefore, her amount realized from the sale must include that amount. To reflect compromises by the parties as to the calculation of basis, Decision will be entered under Rule 155.
Footnotes
1. On his 1979 tax return, John reported that the gain on the sale of his former residence had been rolled over into a new residence with a basis of $ 120,000. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. The parties agree on this figure, which is approximated by totalling John's loans of $ 10,000, $ 25,000, $ 1,900, $ 1,900 and $ 63,075. ↩
4. Babette testified that she waited the 6 months before deeding the interest to John because the settlement agreement had not yet been concluded and it was still possible that she might have to redeed the interest to Robert, who would then deed it to John. This explanation clearly does not square with her other statement that the whole purpose of the transaction was to avoid the two men dealing face to face. Moreover, it is hard to believe that Robert would deed it to her in the course of working out the settlement agreement, giving her the right to dispose of the residence as she wished, only to receive it back in the settlement. ↩
5. Since, as part of the Marital Settlement Agreement, Babette agreed to hold Robert "free and harmless as and from any and all indebtedness of the parties secured by deeds of trust, mortgages, or other encumbrances against [the residence] * * *," only Babette was obligated to repay the October 2, 1979 promissory note that she and Robert had signed. ↩
6. Cf. Commissioner v. Bollinger,    U.S.    (1988); Bussing v. Commissioner,88 T.C. 449 (1987), supplemental opinion 89 T.C. 1050↩ (1987). 7. Respondent urges us to find that the mortgage was a construction loan, and thus a purchase money mortgage under California law. See Prunty v. Bank of America,37 Cal. App. 3d 430, 112 Cal. Rptr. 370 (1974). A purchase money mortgage is nonrecourse under California law. Cal. Civ. Proc. Code section 580(b)↩ (1976). The evidence indicates that this mortgage was not used to finance the construction of the residence, however, but merely to pay off a commercial loan the borrowers had taken out to finance construction. Therefore, it is not a purchase money mortgage and we cannot conclude that it is nonrecourse based on the above statute. 8. Both petitioners testified that John agreed to pay half the mortgage. Babette testified that they would have refinanced to make him co-obligor had it not been for unfavorable interest rates at the time. ↩