IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**HELVETICA SERVICING, INC.**,
*Plaintiff/Appellant*,

*v.*

**MICHAEL S. PASQUAN**,
*Defendant/Appellee.*

No. CV-19-0242-PR
Filed August 25, 2020

————————

Appeal from the Superior Court in Maricopa County
The Honorable John R. Hannah, Jr., Judge
Nos. CV2008-050966
     CV2009-029276
(Consolidated)
**VACATED AND REMANDED**

Opinion of the Court of Appeals, Division One
248 Ariz. 219 (App. 2019)
**VACATED**

————————

COUNSEL:

Buzzi Shindler, Buchalter, Scottsdale; and Jason E. Goldstein, Buchalter,
San Francisco, Attorneys for Helvetica Servicing, Inc.

Daniel L. Kloberdanz, William Kozub, Kozub Kloberdanz, Scottsdale,
Attorneys for Michael S. Pasquan

————————

CHIEF JUSTICE ROBERT BRUTINEL authored the opinion of the Court, in which JUSTICES BOLICK, GOULD, LOPEZ, BEENE, MONTGOMERY and CHIEF JUDGE VÁSQUEZ* joined.

_____

CHIEF JUSTICE BRUTINEL, opinion of the Court:

¶1      Residential purchase money loans are entitled to statutory anti-deficiency protection; that is, the lender cannot seek a money judgment against the borrower. Such protection extends to "construction loans" but not to "home improvement loans." Whether a loan is a construction loan or a home improvement loan is a question of fact that the trial court must resolve. To resolve that question of fact, we hold that a trial court should consider the totality of the circumstances surrounding the loan and we identify some of the factors that the court should evaluate in making that decision.

## I. BACKGROUND

¶2      This is the fifth appeal in this case. *Helvetica Servicing, Inc. v. Pasquan*, 229 Ariz. 493 (App. 2012) [hereinafter *Helvetica I*]; *Gold v. Helvetica Servicing, Inc.*, 229 Ariz. 328 (App. 2012); *Helvetica Servicing, Inc. v. Giraudo*, 241 Ariz. 498 (App. 2017); *Helvetica Servicing, Inc. v. Pasquan*, 248 Ariz. 219 (App. 2019) [hereinafter *Helvetica IV*]. In 2003, Michael and Kelly Pasquan began renovating their 4,000 square-foot home in Paradise Valley (the "Property"), which they purchased with a $600,000 loan from Hamilton Bank (the "Hamilton loan") and a cash payment. Over the next several years, the Pasquans expanded the Property by an additional 7,000 square feet.

¶3      In 2004 and 2005, the Pasquans borrowed approximately $2.1 million from Desert Hills Bank (the "Desert Hills loan"). The Pasquans used a portion of the Desert Hills loan to pay off the Hamilton loan, and used the remainder to renovate/expand the Property.

¶4      In 2006, the Pasquans borrowed $3.4 million from Helvetica (the "Helvetica loan"). The Property secured the deed of trust. The Pasquans used the proceeds of the Helvetica loan to pay off the Desert Hills loan.

_____

* Vice Chief Justice Ann A. Scott Timmer has recused herself from this case. Pursuant to article 6, section 3, of the Arizona Constitution, the Honorable Garye L. Vásquez, Chief Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

¶5　　　　　After the Pasquans defaulted on the Helvetica loan, Helvetica sued to judicially foreclose. Helvetica obtained a judgment for the amount due on the loan plus attorneys' fees and a foreclosure judgment on the Property. After a sheriff's sale, the trial court entered a deficiency judgment against the Pasquans for $1,936,825.53.

¶6　　　　　Pasquan[1] appealed, arguing the Helvetica loan was entitled to anti-deficiency protection. *See Helvetica I*, 229 Ariz. at 497 ¶ 12; *see Baker v. Gardner*, 160 Ariz. 98, 107 (1988) ("By choosing judicial foreclosure, the creditor can obtain a deficiency judgment in all cases except those dealing with purchase money collateral on the residential property described in [A.R.S.] § 33-729(A)."). A deficiency judgment "is nothing more than the difference between the security and the debt." *Valley Nat. Bank of Ariz. v. Kohlhase*, 182 Ariz. 436, 440 (App. 1995) (quoting *Baker*, 160 Ariz. at 104 n.7).

¶7　　　　　*Helvetica I* held a construction loan used to build a home that secures the debt qualifies as a purchase money loan[2] entitled to anti-deficiency protection under § 33-729(A). 229 Ariz. at 501 ¶ 32. *Helvetica I* directed the trial court to address on remand whether the Desert Hills loan was a construction loan or a home improvement loan. *Id.* at 499 ¶ 25 n.6.

¶8　　　　　On remand, after a bench trial, the trial court found the Desert Hills loan was "used for construction of the residence" on the Property with the exception of the $600,000 used to pay off the Hamilton loan. However, the trial court did not make a factual finding as to whether the Desert Hills loan was a construction loan or a home improvement loan. *Helvetica IV*, 248 Ariz. at 221 ¶ 8. The trial court declined to decide this issue because it interpreted *Helvetica I* as foreclosing the argument that the Desert Hills loan was at least in part a home improvement loan.

¶9　　　　　Helvetica appealed. *Helvetica IV* found the Desert Hills loan was a home improvement loan, not a construction loan, primarily because Pasquan "did not build a new home from scratch." *Id.* at 222 ¶ 18.

---

[1]　　　The Pasquans divorced in 2009. Kelly Pasquan is not a party to this appeal.

[2]　　　"[A] purchase money mortgage is one that encumbers the property being sold." *Cely v. DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C.*, 166 Ariz. 500, 505 (App. 1990).

## II.  DISCUSSION

¶10        We granted review to provide guidance concerning the application of Arizona's anti-deficiency laws to home construction and home improvements loans, an issue of statewide importance.  When an appeal presents a mixed question of law and fact, we defer to the trial court's factual findings but review de novo all legal conclusions.  *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996).

¶11        In Arizona, protection for residential borrowers is set forth in two anti-deficiency statutes: A.R.S. §§ 33-729(A) and -814(G).  Residential borrowers are generally not subject to a deficiency judgment on a loan for the purchase of a home if the loan is secured by the home.  The anti-deficiency statutes apply when the collateral is: (1) a property of two-and-a-half acres or less and (2) "limited to and utilized for either a single one-family or a single two-family dwelling."  §§ 33-729(A), -814(G).  Because Helvetica judicially foreclosed its lien, § 33-729(A) is the anti-deficiency statute applicable in this case.  Section 33-729(A) provides:

> [I]f a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price, of a parcel of real property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling, the lien of judgment in an action to foreclose such mortgage shall not extend to any other property of the judgment debtor, nor may general execution be issued against the judgment debtor to enforce such judgment, and if the proceeds of the mortgaged real property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor, notwithstanding any agreement to the contrary.

¶12        Anti-deficiency protection, pursuant to § 33-729(A), includes loans for the construction of new homes.  *Helvetica I*, 229 Ariz. at 501 ¶¶ 31–32; *see Prunty v. Bank of Am.*, 112 Cal. Rptr. 370, 378 (Cal. App. 1974) (applying anti-deficiency protection, under a similarly worded statute, to a construction loan used to finance construction of a residence on a lot already owned by the borrower).  "[A] construction loan qualifies as a purchase money obligation if: (1) the deed of trust securing the loan covers the land *and* the dwelling constructed thereon; and (2) the loan proceeds were in fact used to construct a residence that meets the size and use

requirements set forth in A.R.S. § 33-729(A)." *Helvetica I*, 229 Ariz. at 501 ¶ 32. Neither party challenges that holding.

**¶13**　　　　Home improvement loans are not entitled to anti-deficiency protection. *Sw. Sav. & Loan Ass'n v. Ludi*, 122 Ariz. 226, 228 (1979). *Ludi* involved a home improvement loan assumed by a subsequent purchaser. *Id.* at 227. *Ludi* states, without analysis, that the loan at issue is a home improvement loan, "clearly not covered by" § 33-729(A). *Id.* at 228. *Ludi* provides no guidance as to what makes a loan a construction loan as opposed to a home improvement loan. Rather, *Ludi* stands solely for the proposition that a home improvement loan, unrelated to the construction of a residence, is a non-purchase money obligation not entitled to anti-deficiency protection under § 33-729(A). *Id.*

**¶14**　　　　The issue in this case, left unresolved by *Helvetica I*, is what distinguishes a construction loan from a home improvement loan. Although *Helvetica I* suggested a substantial portion of the Desert Hills loan was a construction loan, it reserved that question and remanded the matter to the trial court for a factual determination. 229 Ariz. at 499 ¶ 25 n.6. However, the trial court instead simply characterized the Desert Hills loan as a construction loan based on its reading of *Helvetica I*.

**¶15**　　　　On appeal, *Helvetica IV* found the Desert Hills loan was a home improvement loan, not a construction loan, primarily because the Pasquans did not build a new home from scratch. *Helvetica IV*, 248 Ariz. at 222–23 ¶ 18. We disagree with this analysis.

**¶16**　　　　The "built from scratch" standard applied in *Helvetica IV* does not further the legislative objectives of Arizona's anti-deficiency statutes because such a rule fails to protect a borrower who obtains what would otherwise be a construction loan, but which does not fit within the narrow definition of a home built from scratch. In 1971, when the Arizona legislature first enacted the anti-deficiency statutes, its objective was to protect homeowners against deficiency judgments arising from the purchase of a home. *Baker*, 160 Ariz. at 101. The legislature wanted to "protect[] consumers from financial ruin" and eliminate "hardships resulting to consumers who, when purchasing a home, fail to realize the extent to which they are subjecting assets besides the home to legal process." *Id.* (citation omitted). Anti-deficiency protection reflects a legislative policy decision to place the risk of inadequate security on lenders rather than borrowers. *Id.* at 103. The anti-deficiency statute discourages purchase money lenders from over-valuing real property by requiring them

to look solely to the collateral for recovery in the event of foreclosure. *Id.* These objectives are why anti-deficiency protection extends only to loan disbursements related to the acquisition or construction of a statutorily-qualifying residence. *Helvetica I*, 229 Ariz. at 502 ¶ 37.

¶17 But there is a substantial grey area between a loan used to finance a newly constructed, built from scratch home and a loan used to remodel the kitchen. Here, we attempt to clarify circumstances under which a loan is a "home improvement loan" as in *Ludi*, as opposed to a "construction loan" under *Helvetica I*. Although construction may involve building an entirely new structure, construction also includes building or rebuilding qualified properties—even if the project did not begin "from scratch" with an empty lot. Differentiating between a construction loan and a home improvement loan is a fact intensive inquiry based on the specifics of the project and property at issue.

¶18 Therefore, a construction loan includes building or rebuilding a residence, where the existing structure is largely demolished. Conversely, a home improvement loan includes elective enhancement, such as the expansion of an existing structure, but not reconstruction of a damaged structure. However, a single definition cannot capture these concepts.

¶19 Because determining whether a loan is a home improvement loan or a construction loan depends on a number of criteria, courts should consider the totality of the circumstances surrounding the loan. We identify five non-exclusive factors indicating whether a loan is a construction loan for purposes of anti-deficiency protection under § 33-729(A): (1) whether there was a complete or substantially complete demolition of an existing structure and a new building constructed in its place; (2) the intent of the parties when executing the loan documents; (3) whether the structure was inhabitable or inhabited during construction; (4) whether the structure was largely preserved and improved or substantially expanded; and (5) whether the project is characterized as "home improvement" or "construction" in the loan documents and in the permits or other official documents. *See Allstate Sav. & Loan Ass'n. v. Murphy*, 159 Cal. Rptr. 663, 664 (Cal. App. 1979) (finding a loan to finance the construction of a swimming pool, seventeen months after the defendants bought the home and moved in, was not entitled to anti-deficiency protection); *Prunty*, 112 Cal. Rptr. at 372 (looking to the parties' intent when executing the relevant loan documents).

¶20    Applying those factors here, several facts suggest that the Desert Hills loan is a construction loan: Over the course of several years the Pasquans demolished most, but not all, of the residence. In stages, the Pasquans replaced the existing building with a larger single-family residence and related improvements. Additionally, the Desert Hills loan was titled a construction loan. Both the Pasquan-Desert Hills Bank deeds of trust that were refinanced by Helvetica are titled "Construction Deed of Trust" and contain language indicating the deeds of trust are intended by the parties to secure a construction loan.

¶21    Conversely, when the Pasquans purchased the property, there was an existing single-family residence on the property. And at all times during the construction there was an inhabitable structure on the property and, at all relevant times, someone did reside on the property. These facts suggest the loan was made for home improvements.

¶22    The record before us presents a close call as to whether the Desert Hills loan is a construction loan or a home improvement loan. But, because the trial court did not make an independent factual determination, we remand for the appropriate factual findings. After considering the factors set forth herein along with any other relevant facts, the trial court must decide whether the loan was made for construction or home improvement. If the court determines it is a construction loan, the borrower is entitled to anti-deficiency protection.

## III.  CONCLUSION

¶23    We vacate the court of appeals' opinion and remand to the trial court. On remand, the trial court should consider the totality of circumstances surrounding the project and the loan, including the factors set forth herein, make a factual determination as to whether the loan was for construction or home improvement, and enter judgment in accordance with its findings.