706 P.2d 360

Linda L. KRIES, Plaintiff,
Counterdefendant-Appellee,

v.

ALLEN CARPET, INC., an Arizona corporation, Defendant,
Counterclaimant-Appellant.

No. 18022–PR.

Supreme Court of Arizona,
In Banc.

Aug. 27, 1985.

Reconsideration Denied Oct. 8, 1985.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Wilbert G. Anderson and Larry L. Smith, Phoenix, for plaintiff, counterdefendant-appellee.

Jeffrey S. Kaufman, Ltd. by Jeffrey S. Kaufman, Phoenix, for defendant, counter-claimant-appellant.

CAMERON, Justice.

This is a petition for review of an opinion of the Court of Appeals reversing the trial court's decision quieting title to certain property in the petitioner. *Kries v. Allen Carpet, Inc.*, Ariz. [No. 1 CA–CIV 6832, filed 24 December 1984]. We have jurisdiction pursuant to Art. 6, § 5(3) of the Arizona Constitution, A.R.S. § 12–120.24 and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We answer two questions on appeal:
1. May a judgment creditor execute and sell real property redeemed by a judgment debtor to satisfy a deficiency resulting from a prior execution and sale?
2. If the answer is yes, does the judgment creditor have the same right against property redeemed by the grantee of the judgment debtor?

The facts of this case are essentially not in dispute. Raymond and Susan Kleinfeld purchased carpeting from Allen Carpet (Allen) but failed to pay for it. Allen sued, obtained a default judgment in the amount of $5,705, and caused a writ of execution to issue. The property in question was then, pursuant to statute, sold on 23 April 1981. Allen purchased it for $550.

Thereafter, the Kleinfelds sold their interest in the property to Utah Valley Properties, Inc., which in turn redeemed and conveyed the property to the petitioner, Kries. Later, Allen caused a second writ of execution to issue against the same

property and again purchased it at sale, this time for $5,542.85. Kries did not redeem the second time but sued to quiet title in the property. At trial, Kries moved for summary judgment, which the trial court granted, in effect quieting title to the property in her and invalidating the second sale. On appeal, the Court of Appeals reversed the trial court and Kries petitioned this Court for review. We granted the petition because of confusion in the law and because we believe the Court of Appeals reached an incorrect result.

## I. May the Creditor Execute on the Same Property?

After a creditor has obtained a judgment against a debtor, he may cause a writ of execution to issue. A.R.S. § 12–1551, *et seq.* Property belonging to the judgment debtor is then sold for the purpose of satisfying the judgment. *Id.* If the proceeds of the sale are less than the amount of the judgment, the creditor may have what is commonly referred to as a deficiency judgment, although it is not a separate judgment as such:

> Technically speaking, there is no such thing under our law as a "deficiency judgment" in the sense that a formal judgment of that description is rendered by the court, or entered by the clerk for the amount not made by the sale of the mortgaged property. There is only the original judgment for the full amount of the indebtedness, upon which a deficiency may exist after the issuance and return of the special execution, or even perhaps of one or more general executions in addition. It has nevertheless been customary in ordinary parlance to refer to the amount still due after the return of the special execution as a "deficiency judgment * * *."

*Bank of Douglas v. Neel*, 30 Ariz. 375, 381–82, 247 P. 132, 134 (1926).

A deficiency judgment does not relate to any particular item of property but rather represents the debtor's personal obligation. *Darnell v. Denton*, 137 Ariz. 204, 207, 669

P.2d 981, 984 (App.1983). The judgment creditor can, therefore, execute against other property belonging to the judgment debtor, including that after-acquired, to satisfy the deficiency.

■ Our statute provides that "[t]he judgment debtor or his successor in interest may redeem [property sold at a judicial sale] at any time within six months after the date of the sale * * * [,]", A.R.S. § 12–1282(B), by paying "the amount of the purchase price with eight percent added thereto, together with the amount of any assessments or taxes which the purchaser has lawfully paid thereon after purchase, and interest on such amount[,]", A.R.S. § 12–1285(A). Thus, by statute, the judgment debtor may redeem his property. The effect of this redemption by the judgment debtor is to restore him to his original position as owner of the property. His property can, therefore, again be reached by the judgment creditor, it making no difference that the property is the same as that sold before. The judgment debtor, by redeeming, runs the risk of subjecting the property to a second execution and sale, just as would his interest in any other property acquired before or after judgment. Under these circumstances, the judgment creditor may re-execute on the same property to satisfy the deficiency judgment.

## II. Is An Assignee of the Judgment Debtor Bound by the Same Result?

The statute states that not only may the judgment debtor redeem the property after sale but also "his successor in interest" may do so. A.R.S. § 12–1282(B). In the instant case, the judgment debtors assigned their redemption right to a third party who exercised it and in turn conveyed the property to Kries. At the time of the assignment and redemption, no special execution had been again issued against the property. Kries claims that, under these circumstances, the creditor was precluded from reselling the property a second time. The trial court agreed, stating:

The issue here is what rights a redeemer of property under the first judicial sale of real property has as against the judgment creditors' attempt to make a second levy and sale where the bid at the first sale is less than the amount of the judgment and the judgment creditor attempts to make a levy for the deficiency balance remaining after the first sale. This issue appears to not have been specifically decided by Arizona's appellate courts previously. There are two lines of authority based upon statutory interpretation which are represented by the California, Nevada, New Mexico, Montana and Idaho courts on one side and the courts of South Dakota and Oregon on the other.

The courts in *Simpson v. Castle*, 52 Cal. 644 (1878); *Wommack [Wammack] v. Sheriff Washoe County*, 166 [466] P.2d 849 (Nev.1970); *First State Bank of Taos v. Wheatcroft*, [36 N.M. 88], 8 P.2d 1061 (N.M.1932); *McQueeney v. Toomey*, [36 Mont. 282], 92 P. 561 (Mont. 1907); and *Evans v. City of American Falls*, [52 Idaho], 11 P.2d 363 (Idaho 1932) all holding the redeemer gets clear title and the second sale is a nullity. *Flanders v. Aumack*, [32 Or. 19], 51 P. 447 (Ore.1901) and *Scamen v. Galligar*, [Galligan 8 S.D. 277], 66 N.W. 458 (S.D. 1896) hold to the contrary.

The rationality of the California rule, plus this Court's examination of *First National Bank v. Maxey*, 34 Ariz. 438, 272 P. 641 (1928) and *Metcalf v. Phoenix Title & Trust*, 33 Ariz. 13, 261 P. 633 (1927) and the general proposition of 42 C.J. 353 § 2081 that Redemption Statutes are to be liberally construed so that the debtor can pay as many debts as possible all lead this Court to believe that Arizona appellate courts would follow the California rule. For those reasons, Plaintiff's Motion for Summary Judgment is granted and Defendant's is denied.

On appeal, both parties cite *Simpson v. Castle*, 52 Cal. 644 (1878), as authority for their respective positions. *Simpson* involved a mortgage foreclosure in which the

mortgagee successfully bid for a sum less than the amount of his judgment or the fair market value of the property. As in the instant case, the debtor then conveyed his interest in the property prior to the expiration of the applicable redemption period. The plaintiff-purchaser then redeemed. This was followed by the mortgagee's second execution upon the property to satisfy the deficiency and the plaintiff's suit to enjoin the sale. In holding for the plaintiff-purchaser, the California court relied upon an amendment to its redemption statute which specifically provided that "after the sale of any real estate, the judgment under which such sale was had shall cease to be a lien on such real estate." *Id.* at 647. Arizona, in amending its statute, did not follow California's lead in providing that judgment liens are extinguished after the sale of the subject property. *Allen*, therefore, argues that *Simpson* is not controlling.

Kries, on the other hand, argues that our redemption statutes were adopted from California. *See* Historical Note following A.R.S. § 12–1285. She asserts that *Simpson* is persuasive authority because it is a California case construing that state's statutes. Ordinarily, we would be constrained to agree. *See Cottonwood Development v. Foothills Area Coalition of Tucson, Inc.*, 134 Ariz. 46, 50, 653 P.2d 694, 698 (1982). As noted, however, the holding in *Simpson* was premised upon an amendment to the California statute not adopted in Arizona. We are then not compelled to give special effect to the judicial interpretation California put upon a statute that has come to differ from our own. This does not mean, however, that we may not reach the same result as the California court. Our task is to determine the legislative purpose in enacting redemption laws, and to choose the course best serving that purpose.

Interpreting the intent of our legislature, the United States Court of Appeals for the Ninth Circuit stated:

> The underlying purpose of the * * * Arizona statutes is to prevent the injustice that occurs when a debtor's property is sold on foreclosure sale for a price significantly less than its fair market value. * * * The Arizona device is to secure to the debtor redemption rights and thus pose an economic threat to purchasers, *including the creditor*, that an artificially low bid can be defeated by redemption.

*United States v. MacKenzie*, 510 F.2d 39, 41 (9th Cir.1975) (emphasis supplied; footnote omitted).

We believe that our legislature's purpose was and is clear: bids not reflecting the true value of the property bid on are to be discouraged. It follows that the redemptioner takes the property free of the debt. If the redemptioner is the judgment debtor, then, as noted above, the creditor may execute on the property again. In absence of fraud or collusion, if the redemptioner is an assignee of the judgment debtor, then the property is taken free of any claims the judgment creditor may have against the judgment debtor.

The result we reach is consistent with case law developed in this and other jurisdictions. A deficiency judgment represents a judgment debtor's personal obligation. *Darnell v. Denton, supra.* Relying on a similar rationale, the Supreme Court of Illinois held that property redeemed by a judgment debtor's grantee was not subject to a second execution to satisfy a deficiency judgment:

> [A] grantee redeeming takes the property free from any lien arising from the deficiency judgment, for the reason that he bought the equity at a time when there was no lien, either active or suspended, against it, and he not being liable to pay the mortgagor's debt, the property he thus acquires is not subject to the deficiency judgment.

*Johnson v. Zahn*, 380 Ill. 320, 328, 44 N.E.2d 15, 19 (1942). The court also stated that "[b]y bidding in the property at less than fair cash value, in the hope that the mortgagor might redeem, and so afford appellant an opportunity to levy on the property to satisfy the deficiency judgment, she followed the course of her own choosing." *Id.* at 324, 44 N.E.2d at 17. *See also Rose v. Loughborough*, 182 Ark.

782, 32 S.W.2d 1066 (1930) (judgment debtor's grantee who redeems takes property free from judgment lien and property was not subject to a second execution to recover any deficiency); *Moody v. Funk*, 82 Iowa 1, 4, 47 N.W. 1008, 1009 (1891) ("[T]here is a marked difference between the case of a redemption by the judgment debtor and that of a redemption by his grantee. It is the policy of the law to secure to the debtor, as nearly as is practicable, the full value of his property sold on execution. If the execution creditor fail to bid for the land sold a just amount, the debtor should be permitted to transfer his interest to another for a fair consideration; and, if his grantee redeem, the execution creditor has no right to complain, for he might have bid for the land a larger sum.").

We hold that the plaintiff, Kries, took the property free from any lien arising from the deficiency after redemption by the judgment debtor's grantee, Utah Valley Properties, Inc.

The opinion of the Court of Appeals is vacated and the judgment of the superior court is affirmed. Remanded for proceedings not inconsistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.