275 P.3d 627

**Ronald L. GOLD, Plaintiff in Intervention/Appellant,**

**v.**

**HELVETICA SERVICING, INC., a California corporation fna CRM Venture Law, Inc. dba The Helvetica Group, Defendant in Intervention/Appellee.**

**No. 1 CA–CV 11–0100.**

Court of Appeals of Arizona, Division 1, Department D.

April 3, 2012.

Nussbaum Gillis & Dinner, P.C. By Randy Nussbaum, Gregory P. Gillis, Scottsdale, Attorneys for Appellant.

Buchalter Nemer By Roger W. Hall, Scottsdale, Attorneys for Appellee.

## OPINION

SWANN, Judge.

¶ 1 This is a judicial foreclosure case. Under A.R.S. § 12–1281, a judgment debtor or a successor in interest may redeem a foreclosed property sold at a sheriff's sale. Alternatively, A.R.S. § 12–1566(C) allows a judgment debtor to ask the court for a fair market value determination ("FMV determination"). The issue presented is whether the exercise by one judgment debtor of the right to an FMV determination deprives co-judgment debtors of their right to redeem the property. We hold that A.R.S. § 12–1566(C) operates to eliminate all rights of redemption when any debtor applies for an FMV determination.

¶ 2 Kelly Pasquan attempted to assign to Ronald L. Gold the right to redeem a foreclosed residential property in Paradise Valley. The property had been sold at a sheriff's sale after a judicial foreclosure in favor of Helvetica Servicing, Inc., against Kelly and Michael Pasquan. Helvetica contested Kelly's assignment because Michael had already exercised the right to request an FMV determination in an effort to reduce his deficiency liability. Gold contended that Michael's exercise of that right could have no effect on Kelly's property interests because the parties were in the midst of divorce proceedings.

¶ 3 The trial court ruled in favor of Helvetica, granting its motion to dismiss Gold's quiet title action and denying Gold's motion to dismiss Helvetica's counterclaim under A.R.S. § 33–420. Gold appeals from both of those rulings.

*FACTS AND PROCEDURAL HISTORY*

¶ 4 In December 2007, Michael filed a petition for dissolution of his marriage to Kelly. In March 2008, Helvetica filed a complaint for judicial foreclosure concerning a property on Fanfol Drive in Paradise Valley, Arizona ("the Fanfol property"), which Kelly and Michael held at that time as community property. Helvetica was the holder of a first priority lien against the Fanfol property by virtue of a deed of trust dated September 14, 2006. The deed of trust secured a promissory note executed by Michael and Kelly for $3,400,000.

¶ 5 In April 2009, the trial court granted Helvetica partial summary judgment against the Pasquans' marital community and also against Michael and Kelly jointly and severally. The trial court awarded Helvetica a judgment of $3,657,793.30 and the right to purchase the property for a credit bid. The judgment declared that Kelly and Michael would be forever barred from any rights in the Fanfol property after the six-month stat-

utory period of redemption. The judgment also declared that if the court later determined that Helvetica was entitled to a deficiency judgment, then Michael and Kelly would be entitled to a credit against the amount owed under that judgment. Pursuant to A.R.S. § 12–1566(B), the amount credited would be the greater of either (1) the sales price at the sheriff's sale or (2) the fair market value determined by the court.

¶ 6 In July 2009, Helvetica bought the Fanfol property at a sheriff's sale for a credit bid of $400,000. On July 31, Michael's counsel sent Kelly a letter, asking that she join in Michael's request for an FMV determination. In that letter, Michael's counsel advised Kelly to seek separate counsel. He also told Kelly that she needed to make a decision quickly, explaining that the deadline to file the application was August 8, 2009.

¶ 7 On August 6, 2009, Michael, acting without Kelly, filed an application for an FMV determination. Helvetica responded, arguing that Michael's request was "premature" and that it should not be granted unless both Michael and Kelly waived the six-month redemption period. On August 18, Kelly's counsel filed a notice of appearance.

¶ 8 On September 22, 2009, the trial court granted Michael's application for an FMV determination. It also ordered the parties to file memoranda addressing whether Helvetica was allowed to obtain a deficiency judgment against the Pasquans.

¶ 9 On September 25, Kelly filed a motion to vacate the court's order granting immediate possession to Helvetica. The motion declared her intent "to assign her redemption rights to a third party." She revealed that this third party intended to redeem the Fanfol property and then lease it back to her so that she and her two children could continue to reside there.

¶ 10 The decree dissolving the marriage between Michael and Kelly was entered on October 19, 2009. The decree did not mention the Fanfol property or provide for the distribution of any real property interests related to the house.

¶ 11 At a November 2 hearing, Kelly admitted that the intended assignment had not yet occurred. After that hearing, the court denied the anti-deficiency relief that Michael had sought and set an FMV-determination hearing for January 22, 2010. The court also denied Kelly's motion to vacate and ordered her to leave the Fanfol property by November 10.

¶ 12 On November 9, Kelly executed an assignment of redemption rights relating to the Fanfol property to Gold. Gold recorded the assignment in the Maricopa County Recorder's Office later that day, and delivered a check for $432,000 to the Maricopa County Sheriff's Office.[1] Gold also filed with the court a notice that the redemption right had been assigned and that he intended to redeem the Fanfol property.

¶ 13 On November 19, the court held a hearing regarding Kelly's refusal to surrender the premises. Gold argued that Michael's FMV-determination request did not defeat Kelly's redemption right because Kelly was a judgment debtor "in and of her own right" and the redemption statute was intended to protect judgment debtors. Ultimately, the court ordered Kelly to move out of the Fanfol property by November 24. Kelly complied.

¶ 14 On January 8, 2010, Gold filed a complaint in intervention. Gold asked the court to quiet title by declaring that he had validly exercised the right to redeem the Fanfol property and that Helvetica, Michael, Kelly and various lien holders were barred from asserting rights in the property adverse to his.

¶ 15 On February 12, Helvetica moved to dismiss Gold's complaint in intervention. Helvetica argued that Kelly waived the right of redemption by her "failure to object" to Michael's request for an FMV determination. On the same day, Helvetica also filed a counterclaim against Gold. It alleged that Gold's filing of the assignment on November 9 violated A.R.S. § 33–420 because the assignment was "groundless," contained "material

---

1. The figure $432,000 reflects the purchase price at the sheriff's sale plus eight percent of that price. The additional eight percent is required by A.R.S. § 12–1285(A).

misstatements" and "false claims," and was "otherwise invalid."

¶ 16 The court made the FMV determination on February 6, 2010. It found the fair market value of the Fanfol property to be $2,266,666.67.

¶ 17 On March 2, Gold responded to Helvetica's motion to dismiss. He argued that Michael could not have extinguished Kelly's right of redemption because the right to request an FMV determination is the "unique personal right of each individual judgment debtor." Gold also filed a motion to dismiss Helvetica's counterclaim, arguing that because it failed to state any facts beyond a mere reiteration of the assignment's wording, the court could not reasonably infer anything that would support his liability under A.R.S. § 33–420.

¶ 18 The court found that as a matter of law Kelly had "waived" her right to redeem the Fanfol property. It entered a judgment pursuant to Ariz. R. Civ. P. 54(b) that granted Helvetica's motion to dismiss Gold's complaint in intervention. The judgment also denied Gold's motion to dismiss Helvetica's counterclaim. Gold timely appeals from that judgment.

## DISCUSSION

### I. HELVETICA'S MOTION TO DISMISS GOLD'S CLAIMS WAS PROPERLY GRANTED.

¶ 19 The "right to redeem" is not a creature of the common law—it is purely statutory. *See W. Land & Cattle Co. v. Nat'l Bank of Ariz.,* 29 Ariz. 51, 56, 239 P. 299, 301 (1925) ("It is the statute that gives the right of redemption, and not the decree of the court.") (citation omitted). When interpreting statutes, we must attempt to fulfill the legislature's intent by looking at the plain, unambiguous meaning of the statutory language. *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) (citations omitted).

¶ 20 The right of redemption originates in A.R.S. § 12–1281:

Property sold subject to redemption, or any part sold separately, may be redeemed by the following persons or their successors in interest:

1. The judgment debtor or his successor in interest in the whole or any part of the property.

2. A creditor having a lien by judgment or mortgage on the property sold, or on some share or part thereof, subsequent to that on which the property was sold.

¶ 21 The purpose of these redemption statutes is to protect judgment debtors from unfairly low bids at foreclosure sales. *Kries v. Allen Carpet, Inc.,* 146 Ariz. 348, 351, 706 P.2d 360, 363 (1985) ("We believe that our legislature's purpose was and is clear: bids not reflecting the true value of the property bid on are to be discouraged."). The redemption statutes provide that protection by "pos[ing] an economic threat to prospective purchasers, including the creditor, that an artificially low bid can be defeated by redemption." *Id.* (quoting *United States v. MacKenzie,* 510 F.2d 39, 41 (9th Cir.1975)).

¶ 22 Arizona's legislature has provided certain judgment debtors with another form of protection from unfair foreclosure sales: the FMV determination. Under A.R.S. § 12–1566(B),

[a]ny sale of real property under this section shall be a credit on the amount of the judgment in the amount of either the fair market value of the real property determined under subsection C of this section or the sales price of the real property at a sheriff's sale, whichever is greater.

¶ 23 A.R.S. § 12–1566(C) spells out how these two forms of judgment-debtor protection—the right to seek an FMV determination and the right to redeem—relate to one another and to the judgment debtors. In relation to each other, these two forms of protection are mutually exclusive. In relation to a particular set of judgment debtors, the question of which form of protection actually applies can be determined by any one judgment debtor acting alone. The statute provides:

*Any judgment debtor* against whom a judgment has been entered pursuant to section 33–725 or 33–814 may, not later

than thirty days after sale of the real property, file a written application with the court for determination of the fair market value of the real property which has been sold. Notice of filing the application and of the hearing shall be given to all parties to the action. The fair market value shall be determined by the court at a priority hearing which shall be held upon such evidence as the court may allow. The court shall issue an order crediting the amount due on the judgment with the greater of the sales price or the fair market value of the real property.... *If an application has been filed, there shall be no right to redemption as to the real property sold....*

A.R.S. § 12–1566(C) (emphasis added).

¶ 24 The right to request the court's FMV determination is plainly available to each of the judgment debtors: an application may be filed by "[a]ny judgment debtor." A.R.S. § 12–1566(C). The statute is also unambiguous about what happens when any one of the judgment debtors applies for an FMV determination: "If an application has been filed, there shall be no right to redemption as to the real property sold...." *Id.* By using the passive voice (i.e., "an application has been filed"), the statute provides that one judgment debtor can exercise the right to apply for an FMV determination and thereby extinguish the right to redeem that another judgment debtor might have exercised. We therefore conclude that no individual judgment debtor has a redemption right existing independently of the request for an FMV determination. Once an FMV determination is requested, the right to redeem the property simply ceases to exist. This conclusion rests squarely on the statute's language: an individual judgment debtor's request for an FMV determination means that "there shall be no right to redemption *as to the real property sold.*"[2] *Id.* (emphasis added).

¶ 25 Here, Helvetica brought a foreclosure complaint under § 33–725. The judgment entered in favor of Helvetica was not only against the marital community, but also against Michael and Kelly jointly and sever-

ally. Each was therefore a judgment debtor. Because each of them had that status, either of them could have exercised the right to redeem after the sheriff's sale, and either of them could have exercised the right to request an FMV determination. As it happened, Michael, not Kelly, was the first judgment debtor to exercise one of those rights. And by exercising the right to apply for an FMV determination, Michael extinguished the right to redeem both for himself and for Kelly by operation of § 12–1566(C).

¶ 26 On appeal, Gold claims that Michael, as a husband in the process of divorce, was not able to extinguish that right both for himself and for Kelly. The reason, he says, is that "the joinder of both spouses is required ... [t]o bind the community, irrespective of any person's intent with respect to that binder, after service of a petition for dissolution of marriage ... if the petition results in a decree of dissolution of marriage...." A.R.S. § 25–214(C)(3). Because Michael's filing resulted in the loss of the right to redeem for Kelly, Gold argues that it was an act that required Kelly's joinder under A.R.S. § 25–214(C)(3). We disagree. According to § 12–1566(C), by exercising the right to apply for an FMV determination, Michael did not "bind" the marital community or affect Kelly in her capacity as a spouse—Michael's application as an individual judgment debtor extinguished the right of redemption with respect to the property.

¶ 27 In her capacity as a judgment debtor, Kelly actually benefitted from the court's determination that the Fanfol property had a fair market value significantly greater than the price Helvetica bid at the sheriff's sale. Under A.R.S. § 12–1566(B), both Kelly and Michael, jointly and severally liable on the foreclosure judgment, receive "a credit on the amount of the judgment" for $2,266,666.67 rather than the bid of $400,000. And even if Michael's request for the FMV determination thwarted Kelly's plan to lease the Fanfol property back from Gold, the right of redemption is not designed to ensure that a debtor can remain in his or her home; it is intended to protect a judgment debtor

---

**2.** We recognize that after a judgment debtor applies for an FMV determination, the right of redemption can still be exercised by "creditors having a junior lien." A.R.S. § 12–1566(C).

from an unfair foreclosure sale. Kelly, as a judgment debtor, received that protection when Michael requested an FMV determination under § 12–1566(C). Had Kelly and Gold been able to redeem the property, Kelly would have benefitted twice—first, from the vastly reduced deficiency liability produced by the FMV determination, and secondly by purchasing the property for far less than its market value. The statute was not designed to create such a windfall.

## II. HELVETICA'S COUNTERCLAIM AGAINST GOLD CANNOT BE CONSIDERED ON APPEAL.

¶ 28 Gold asks us to consider the propriety of the trial court's denial of his motion to dismiss Helvetica's counterclaim. That denial was included in the court's December 9 judgment, but the court never resolved the claim. A trial court's Rule 54(b) determination will not render an unadjudicated claim appealable. *Sisemore v. Farmers Ins. Co. of Ariz.*, 161 Ariz. 564, 567, 779 P.2d 1303, 1306 (App.1989) (citing *Musa v. Adrian*, 130 Ariz. 311, 636 P.2d 89 (1981)). We therefore have no jurisdiction to consider that order.

## CONCLUSION

¶ 29 The trial court's December 9 judgment is affirmed insofar as it grants Helvetica's motion to dismiss Gold's claim. Both parties have requested attorney's fees. In the exercise of our discretion, we decline to award fees.

CONCURRING: MICHAEL J. BROWN and JON W. THOMPSON, Judges.