IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HELVETICA SERVICING, INC., a California corporation, formerly known as CRM VENTURE LAW, INC., dba THE HELVETICA GROUP, *Plaintiff/Cross-Claimant/Appellee/Cross-Appellant*,

*v.*

JOSEPH J. GIRAUDO, *Third-Party Defendant in interpleader/Appellant/Cross-Appellee.*

No. 1 CA-CV 15-0490
FILED 2-9-2017

Appeal from the Superior Court in Maricopa County
Nos. CV2008-050966 and CV2009-029276
(Consolidated)
The Honorable John Hannah, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Buchalter Nemer, PC, Scottsdale
By Roger W. Hall, Jason Edward Goldstein
*Counsel for Plaintiff/Cross-Claimant/Appellee/Cross-Appellant*

The Kozub Law Group, Scottsdale
By Daniel L. Kloberdanz
*Counsel for Third-Party Defendant in interpleader/Appellant/Cross-Appellee*

---

## OPINION

Presiding Judge Peter B. Swann delivered the opinion of the Court, in which Judge Patricia A. Orozco (retired) and Chief Judge Michael J. Brown joined.

---

**S W A N N**, Judge:

**¶1** This is the third appeal stemming from a 2009 judicial foreclosure sale of a house. Joseph J. Giraudo appeals from a summary judgment ruling that the amount he must pay as a junior lienholder to redeem the property includes the total value of the foreclosing senior lien and not merely the sale price at the foreclosure sale. The Helvetica Group cross-appeals a summary judgment dismissing its claims that Giraudo recorded a document claiming an interest in property that he knew or should have known was groundless or invalid. For the following reasons, we affirm the dismissal of the counterclaim and reverse in part the superior court's determination of the redemption price and remand for further proceedings to determine the redemption price.

**¶2** We hold that the junior lienholder who redeems a property after a foreclosure sale must pay (1) the purchase price at the sale, plus eight percent, and (2) any portion of the lien that survives the lawsuits between the foreclosing creditor and the mortgage debtor that must be initiated before the junior lienholder's right to redeem ripens.

### FACTS AND PROCEDURAL HISTORY

**¶3** The facts in this case are largely undisputed, and portions of it have already come before us. *Helvetica Servicing, Inc. v. Pasquan*, 229 Ariz. 493 (App. 2012) [hereinafter *Helvetica I*]; *Gold v. Helvetica Servicing, Inc.*, 229 Ariz. 328 (App. 2012) [hereinafter *Helvetica II*].[1] In May 2003, Michael and Kelly Pasquan purchased a home in Paradise Valley ("the Fanfol Property") with a cash payment and a $600,000 loan. *Helvetica I*, 229 Ariz. at 495, ¶ 2. The Pasquans refinanced the original loan and took out additional loans totaling about $2.1 million to cover the costs of demolishing most of the old home and building a new one. *Helvetica I*, 229 Ariz. at 495, ¶¶ 2–4. In 2006,

---

[1] The two opinions were decided around the same time by different panels of this court in 2012. *See Helvetica I*, 229 Ariz. at 493, 502; *Helvetica II*, 229 Ariz. at 328, 330.

the Pasquans took out a $3.4 million loan serviced by Helvetica and secured by a deed of trust against the Fanfol Property. *Id.* at 495, ¶ 5. The Helvetica loan covered the cost of the interest payments on the Helvetica loan and "improvements, landscaping, maintenance, taxes, utilities and marketing fees for the house." *Id.* Michael Pasquan contended in *Helvetica I* that the Helvetica loan also refinanced the existing $2.1 million debt on the property. *Id.* at 497, ¶ 12. In June 2007, Giraudo lent the Pasquans $200,000 secured by a recorded junior deed of trust on the Fanfol Property.

¶4 The Pasquans defaulted on the Helvetica loan, and in March 2008 Helvetica initiated foreclosure proceedings but did not join any of the junior lienholders.[2] Helvetica obtained a judgment for over $3.6 million against the Pasquans and the sheriff initiated a foreclosure sale. At the foreclosure sale in July 2009, Helvetica was the sole bidder. It purchased the Fanfol Property for $400,000.

¶5 The Pasquans divorced in October 2009. Under A.R.S. § 12-1566, Michael Pasquan filed an application to determine the fair market value of the Fanfol Property, and in February 2010 the superior court determined it to be just over $2.2 million. *See Helvetica II*, 229 Ariz. at 330, ¶¶ 5, 16. In April 2010, Helvetica attained a revised deficiency judgment of almost $2 million, based on the fair market value determination. *Helvetica I*, 229 Ariz. at 495, ¶ 7. In March 2012, we vacated the deficiency judgment because we held that Helvetica's loan was at least in part a purchase money loan subject to the anti-deficiency statutes and remanded the case to the superior court to determine, *inter alia*, what portion of the loan was entitled to anti-deficiency protection. *Id.* at 499, 502, ¶¶ 23, 38; *see also* A.R.S. § 33-729.

¶6 During the proceedings and before the appeal in *Helvetica I*, Kelly Pasquan attempted to assign her right to redeem the property to a third party, Ronald Gold, who then intervened in the proceeding. *Helvetica II*, 229 Ariz. at 330, ¶ 12. We held in *Helvetica II* that Michael Pasquan's request for a fair market value determination extinguished Kelly Pasquan's right to redeem the property. *Id.* at 332, ¶ 26. However, we noted that

---

[2] Because the junior lienholders were not joined in the foreclosure proceedings, their interests were not defeated when the property was sold at auction. *Hummel v. Citizens' Bldg. & Loan Ass'n*, 38 Ariz. 54, 56 (1931). In a motion before the trial court, Helvetica admitted that it deliberately chose not to name any of the junior creditors to "invite[] junior lienholder redemption."

junior lienholders could still exercise their redemption rights. *Id.* at ¶ 24 n.2.

¶7        On September 1, 2009, Giraudo filed a notice of his intent to redeem the Fanfol Property with the Maricopa County Recorder's office and furnished a $432,000 cashier's check. About two weeks later, the sheriff filed an interpleader action against Giraudo and Helvetica in response to Helvetica's emergency motion to stop Giraudo's redemption. In December 2009, the superior court granted Gold's unopposed motion to consolidate the interpleader action and the original foreclosure.

¶8        Helvetica moved to quash Giraudo's redemption arguing in part that Giraudo had to pay the full value of Helvetica's original lien (which at that time had a balance due of over $3.7 million[3]), not merely the sale price at the foreclosure sale. Helvetica also asserted a counterclaim that Giraudo filed a "groundless, false and invalid" redemption claim to the detriment of Helvetica and sought actual and treble damages. In July 2010, the superior court granted Helvetica's motion to quash Giraudo's redemption but did not issue an appealable order. The superior court reasoned that $3.4 million of the lien had survived the foreclosure sale as "represented by its Deed of Trust."[4] In August 2012, Helvetica moved for summary judgment against Giraudo. In light of our holding in *Helvetica II*, Giraudo filed his second motion to reconsider the July 2010 ruling. The superior court denied Giraudo's motion and in June 2015 issued a final order quashing Giraudo's redemption filing and dismissing Helvetica's counterclaim. Giraudo appeals and Helvetica cross-appeals.

## DISCUSSION

¶9        We review summary judgment rulings de novo. *Aranki v. RKP Investments, Inc.*, 194 Ariz. 206, 208, ¶ 6 (App. 1999), *as corrected* (May 3, 1999). Because Helvetica's counterclaim alleges that Giraudo does not have a right to redeem the Fanfol Property based on the terms of his deed of trust, we address the counterclaim first.

---

[3]        The balance was net of the $400,000 sales price at auction.

[4]        Giraudo's first motion to reconsider argued that the deed of trust was no longer a lien against the property after the foreclosure sale. The superior court summarily denied the motion.

I.  GIRAUDO HAD A RIGHT TO REDEEM THE PROPERTY, AND THE SUPERIOR COURT PROPERLY DISMISSED HELVETICA'S COUNTERCLAIM.

¶10       Helvetica claims Giraudo knew his notice of intent to redeem was "groundless, contain[ed] material misstatements, contain[ed] false claims and [was] otherwise invalid." *See* A.R.S. § 33-420(A) (awarding damages and attorney's fees to anyone who "causes a document asserting [a] claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid"). Helvetica argues that Giraudo is not a creditor, because his deed of trust listed Mortgage Electronic Registration Systems, Inc. ("MERS") as "the beneficiary," which Helvetica argues made MERS the only entity with redemption rights.

¶11       We find no merit in this argument. The deed lists Giraudo as the "lender" and the Pasquans as the "borrower[s]."[5] The term "creditor" does not appear anywhere in the deed. The deed gives Giraudo the right to repayment of the loan, and provides that in the event of foreclosure he may "do and pay for whatever is reasonable or appropriate to protect [his] interests . . . include[ing], but [] not limited to, . . . paying any sums secured by a lien which has priority over this security instrument." Giraudo's discretion under the deed includes the right to redeem, and it is irrelevant that the deed referred to Giraudo as a "lender" instead of a "creditor."[6] We

---

[5]       Helvetica relies on a single sentence from *Bank One, Arizona, N.A. v. Beauvais*, 188 Ariz. 245 (App. 1997). There we said, "the [*Baker v. Gardner*, 160 Ariz. 98 (1988)] court concluded that if a deed of trust beneficiary chooses to foreclose judicially, as is done with a mortgage, the creditor can elect to waive the security . . . and sue on the note." *Bank One*, 188 Ariz. at 249. It argues that "beneficiary" and "creditor" were used interchangeably, and therefore only a beneficiary or creditor (not a lender) could redeem.

[6]       Helvetica's reliance on *Sitton v. Deutsche Bank Nat'l Trust Co.* is misplaced. There we decided that listing a defunct company as a lender was not a material misrepresentation in a deed of trust where MERS was the trust's beneficiary and lender's nominee. 233 Ariz. 215, 221, ¶¶ 27–28 (App. 2013). In that case, we found the borrower's rights were not affected, because MERS had the authority to assign the lender's rights to a new party or act on the lender's behalf, as it can here. *Id.* Giraudo is not a defunct lender and retains his rights under the deed of trust.

conclude Giraudo was a creditor for purposes of § 12-1281 and was eligible to redeem the Fanfol Property.

II.     THE REDEMPTION PRICE INCLUDES THE PORTION OF THE FORECLOSING CREDITOR'S LIEN THAT IS NOT SATISFIED BY THE SALE PRICE, REDUCED BY THE FAIR MARKET VALUE DETERMINIATION, OR ELIMINATED BY THE ANTI-DEFICENCY STATUTES.

¶12     The only issue Giraudo raises on appeal is whether the redemption price for a junior lienholder includes the value of the foreclosing party's lien.  The resolution of this question requires us to consider three issues.  First, we must determine whether the redemption statutes require a redeeming junior lienholder to pay the value of the lien of a foreclosing senior lienholder who is also the purchaser at auction.  Then we must determine whether the mortgage debtor's request for a fair market value determination affects the redemption price.  And finally, we must determine whether the anti-deficiency statutes, which prevent the foreclosing lender from obtaining a deficiency judgment against the mortgage debtor, affect a junior lienholder's redemption price.

¶13     We begin by looking at several of the redemption statutes.  A.R.S. § 12-1566(C) addresses the effect of a request for a fair market value hearing on redemption rights.  The statute provides in relevant part:

> Any judgment debtor against whom a judgment has been entered . . . may, not later than thirty days after sale of the real property, file a written application with the court for determination of the fair market value of the real property which has been sold. . . . If an application has been filed, there shall be no right to redemption as to the real property sold . . . , *except creditors having a junior lien to the lien foreclosed may redeem by five day successive periods as provided in § 12-1282, subsection C, commencing sixty days after the sale of the real property.  The redemption price shall be calculated on the sales price of the real property.*

(Emphasis added.)  A.R.S. § 12-1282(C) defines the priority of redemption rights when the property owner does not redeem the property after a foreclosure sale.  The statute provides:

> If the [judgment debtor's] redemption . . . is not made, the senior creditor having a lien . . . upon the premises sold . . . subsequent to the judgment under which the sale was made,

6

may redeem within five days after expiration of the [judgment debtor's right to redeem], and each subsequent creditor having a lien in succession, according to priority of liens, within five days after the time allowed the prior lienholder, respectively, *may redeem by paying the amount for which the property was sold and all liens prior to his own held by the person from whom redemption is made, together with the eight per cent added to the amount as provided in § 12-1285.*

(Emphasis added.) And finally, A.R.S. § 12-1285 provides the overall structure of the redemption price calculation:

> A. In redeeming property *the judgment debtor* shall pay the amount of the purchase price with eight per cent added thereto, together with the amount of any assessments or taxes which the purchaser has lawfully paid thereon after purchase, and interest on such amount.

> B. Each subsequent redemptioner shall pay the aggregate of such amounts plus the amount of the lien thereon of the ones who may have redeemed the property theretofore. *If the purchaser is also a creditor having a prior lien to that of the redemptioner, other than the judgment lien, the redemptioner shall pay, in addition, the amount of such creditor's lien with interest. . . .*

(Emphases added.)

**¶14**      Each of these three statutes, standing alone, might suggest an answer to the question posed by this appeal. But because they are part of a cohesive overall scheme, we must interpret each statute to avoid rendering "any of its language mere surplusage, and instead give meaning to each word, phrase, clause, and sentence so that no part of the statute will be void, inert, redundant, or trivial." *In re Estate of Zaritsky*, 198 Ariz. 599, 603, ¶ 11 (App. 2000) (internal quotations, citations, and modifications omitted).

**¶15**      Giraudo argues he should only have to pay the sale price. He bases this contention on the last sentence of § 12-1566(C), which he reads to set the redemption price at the foreclosure sale price.[7] Section 12-1566(C)

---

[7]      His primary argument is that this issue was already decided in *Helvetica II* when we said "[w]e recognize that after a judgment debtor

provides that "[t]he redemption price shall be *calculated* on the sales price of the real property." (Emphasis added.) But the section does not provide that the redemption price shall *be* the sales price, and it does not define the remainder of the calculation. If § 12-1566(C) ended the analysis, then §§ 12-1282 and -1285 would be largely unnecessary — a consequence our interpretive canons forbid.

**¶16** A.R.S. § 12-1285(B) does define the calculation: "If the purchaser is also a creditor having a prior lien to that of the redemptioner, other than the judgment lien, the redemptioner shall pay, in addition, the amount of such creditor's lien with interest." Under this provision, Giraudo's redemption price would be "calculated on the sales price," as § 12-1566(C) requires, and the amount of the senior lien would be "in addition" to that amount. This reading gives meaning to both §§ 12-1566 and -1285. We then must determine the amount of the senior lien.

**¶17** In situations where a senior lienholder forecloses on the property, §§ 12-1282 and -1566 provide that a junior lienholder may redeem the property only after the mortgage debtor's opportunity to redeem or request a fair market value determination has expired. Thus, by the time a junior lienholder's right to redeem ripens, the lien's value may have changed. We hold that the redemption price includes only the portion of the lien that survives any actions between the foreclosing creditor and the mortgage debtor that must be commenced before the junior lienholder's right to redeem ripens.

**¶18** Giraudo argues that the phrase "other than the judgment lien" in § 12-1285(B) means that a junior lienholder seeking to redeem must pay all the liens senior to his own *except* the one that was foreclosed. We disagree because the foreclosed senior mortgage lien is not a "judgment lien."

**¶19** "Judgment liens do not exist at common law, they exist only by statute. . . . As a result, strict compliance with the statutory requirements is necessary to perfect a valid judgment lien." *Sysco Ariz., Inc. v. Hoskins*,

---

applies for [a fair market value] determination, the right of redemption can still be exercised by 'creditors having a junior lien.'" 229 Ariz. at 332, ¶ 24 n.2 (quoting § 12-1566(C)). He argues that by quoting and citing to § 12-1566(C) we have already held that it controls the redemption price for junior lienholders. But in *Helvetica II* we noted only that junior lienholders retain a *right* to redeem. We did not decide the redemption price because it was not at issue in that appeal.

235 Ariz. 164, 165, ¶ 8 (App. 2014) (citations omitted); *see generally*, Arizona Revised Statutes Title 33, Chapter 7, Article 5 (Judgment Liens on Real Property). Judgments on foreclosed mortgages differ from judgment liens in two important respects. First, there is no requirement that a foreclosure judgment be separately recorded before the sale. *Cf.* A.R.S. § 33-961 ("Failure to substantially comply with this section and § 33-967, results in the judgment not becoming a lien."). To the contrary, a judgment of foreclosure must include an order that the property be sold, and recordation under § 33-961 would be superfluous. *See* A.R.S. § 33-725. In short, there is no requirement that a foreclosure judgment be treated as a new "judgement lien" separate from the mortgage lien it forecloses.

**¶20** Second, judgment liens do not apply to homestead property. A.R.S. § 33-964(B) provides that "[a]ny person entitled to a homestead on real property as provided by law holds the homestead property free and clear of the judgment lien." And A.R.S. § 33-1103(A) provides that a homestead is exempt from sale under a "judgment or lien" but is not exempt from sale under "[a] consensual lien, including a mortgage or deed of trust . . . ." By distinguishing consensual liens from other judgments and liens, the legislature permits consensual lienholders to foreclose on homestead property but not judgment lienholders. Because the legislature has expressly defined "judgment liens" in § 33-964, and treated them differently from "consensual liens," we hold that the term "judgment lien" as used in § 12-1285(B) does not include a judgment on a foreclosed mortgage.

**¶21** Next, we must determine whether Michael Pasquan's request for a fair market value determination, which reduced the deficiency judgment by about $2.2 million, affects the redemption price of junior lienholders. Helvetica argues that the redemption amount is the sale price, plus eight percent, plus the original, full value of the foreclosed lien. It contends that when it purchased the property at auction, it kept its $3.4 million lien on the property. In support, Helvetica relies on language in *Kries v. Allen Carpet, Inc.*: "Arizona, in amending its statute, did not follow California's lead in providing that judgment liens are extinguished after the sale of the subject property." 146 Ariz. 348, 351 (1985). Helvetica's reading of *Kries* fails to account for the whole of the court's opinion. The court went on to explain:

> We believe that our legislature's purpose was and is clear: bids not reflecting the true value of the property bid on are to be discouraged. It follows that the redemptioner takes the

property free of the debt. *If the redemptioner is the judgment debtor*, then . . . the creditor may execute on the property again.

*Id.* (emphasis added). We find no support in *Kries* for Helvetica's contention that a mortgage lender can purchase property at auction at an artificially low price and still maintain the balance owed on its deed of trust as a lien on the property once the property is redeemed by another *creditor*.[8] Had the property been sold to a third party, the lien would have been extinguished. We see nothing in Arizona law that would allow the foreclosing lien to survive after the property is sold at auction.

¶22        The redemption price includes the value of the foreclosing lien not because the lien remains attached to the property, but because the redemption statutes require its inclusion. The value of the lien is determined by the deficiency judgment after the foreclosure sale. Redeeming junior lienholders must only pay the value of the foreclosed senior lien that survives the post-auction proceedings between the foreclosing lienholder and the mortgage debtor. The mortgage debtor's only opportunity to request a fair market value determination or redeem the property is before the junior lienholder's redemption right begins. A.R.S. § 12-1566(C). We therefore hold that when the judgment debtor requests a fair market value determination, the junior lienholder's redemption price is reduced to the extent the deficiency judgment is reduced by the fair market value proceedings.

¶23        Because we hold that the redeeming junior lienholder must pay the lien as it exists when its right to redeem ripens, we must also determine whether the junior lienholder's redemption price is affected by the anti-deficiency statutes. The relevant statute reads:

> if a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price, of a parcel of real property of two and one-

---

[8]        Helvetica's reading of § 12-1285(B) would mean that the value of the foreclosed senior lien is unaffected by the foreclosure sale at all. This would allow the foreclosing senior creditor to exact its below-market-value bid, plus eight percent, plus the full balance of its lien from a junior lienholder. Here, Helvetica would net $432,000 more than was due on the deed of trust. Rather than discouraging senior creditors from making low bids at the foreclosure sale, this approach would create a windfall at the expense of junior lienholders. We see nothing in the language or purpose of the redemption statutes to support such a result.

half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling, *the lien of judgment in an action to foreclose such mortgage shall not extend to any other property of the judgment debtor*, nor may general execution be issued against the judgment debtor to enforce such judgment, and *if the proceeds of the mortgaged real property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor*, notwithstanding any agreement to the contrary.

A.R.S. § 33-729(A) (emphases added). Reading the redemption and anti-deficiency statutes together, we conclude they allow the junior lienholder to make the senior lienholder whole by paying the outstanding value of its allowable deficiency judgment. By rendering a portion of the debt unenforceable against the judgment debtor, the anti-deficiency statutes effectively reduce the lien value immediately upon the sale of the property. When a deficiency judgment is smaller than the loan balance because of the anti-deficiency statute, the redemption price is likewise reduced.

¶24 Though the language of the anti-deficiency statute implies that the deficiency judgment could be enforceable against someone other than the judgment debtor, it is the redemption statutes, not the anti-deficiency statutes, that determine the redemption price. The anti-deficiency statutes might be enforceable against someone other than the judgment debtor. But the portion of the lien that cannot be enforced against the judgment debtor is equally unenforceable against a redeeming junior lienholder.

¶25 We are unable to determine from this record what portion of the lien is subject to anti-deficiency protection or how much of the deficiency judgment is still unpaid. *See Helvetica I*, 229 Ariz. at 502, ¶¶ 38–39. If the full value of the lien is canceled by the fair market value determination and the anti-deficiency statute, then Giraudo's redemption was proper and he is entitled to title of the Fanfol Property. If any part of the lien value is still enforceable against the Pasquans, then the price of redemption must include that amount.

## CONCLUSION

¶26 For the forgoing reasons, we affirm the superior court's dismissal of Helvetica's counterclaim. We affirm the ruling that the redemption price includes the value of Helvetica's lien but reverse the

determination that the redemption price is the face value of Helvetica's lien as it existed immediately following the foreclosure sale. We hold that the redemption price is the sales price at auction, plus eight percent, plus the value of the deficiency judgment that is enforceable against the mortgage debtors when the junior lienholder's redemption right ripens. We remand for further proceedings to determine the redemption price.

