IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HELVETICA SERVICING, INC., *Plaintiff/Appellant*,

*v.*

MICHAEL S. PASQUAN, *Defendant/Appellee*.

No. 1 CA-CV 17-0699
FILED 8-15-2019

Appeal from the Superior Court in Maricopa County
Nos. CV2008-050966
CV2009-029276
(Consolidated)
The Honorable John R. Hannah, Jr., Judge

**VACATED AND REMANDED**

COUNSEL

Buchalter, Scottsdale
By Roger W. Hall, Jason E. Goldstein, *Pro Hac Vice*
*Counsel for Plaintiff/Appellant*

Daniel Kloberdanz, PLC, Scottsdale
By Daniel L. Kloberdanz
*Counsel for Defendant/Appellee*

---

**OPINION**

---

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1　　　　Helvetica Servicing, Inc. ("Helvetica") appeals the deficiency judgment the superior court entered in its favor against Michael S. Pasquan ("Pasquan"). Helvetica argues the court erred in deciding that most of the debt remaining after a judicial foreclosure was a construction loan entitled to anti-deficiency protection under Arizona Revised Statutes ("A.R.S.") section 33-729(A). Its appeal raises issues that demand clarification by the legislature.

¶2　　　　We held in *Helvetica Servicing, Inc. v. Pasquan*, 229 Ariz. 493, 501, ¶ 32 (App. 2012) (hereinafter *Helvetica I*), that the anti-deficiency protections of A.R.S. § 33-729(A) apply to a loan "used to construct a residence" if a dwelling meets the size and use requirements of the statute and the deed of trust secures both the land and the dwelling. We also recognized that "[i]n some cases, it will be a question of fact whether a particular transaction is a construction loan or some different type of obligation—e.g., a home improvement loan." *Id.* at 499 n.6, ¶ 25. Here, the evidence in the record shows that, aside from the $600,000 original purchase money loan that was later refinanced as part of a loan from Helvetica, Pasquan used the bulk of the loan proceeds for the purpose of home improvement, not home construction. Therefore, the anti-deficiency protections of A.R.S. § 33-729(A) do not extend to the funds Pasquan borrowed beyond the refinancing of the original purchase money obligation. Accordingly, we vacate the judgment and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶3　　　　This is the fourth appeal stemming from a 2009 judicial foreclosure sale of Pasquan's home. *Helvetica I*, 229 Ariz. at 495; *Gold v. Helvetica Servicing, Inc.*, 229 Ariz. 328 (App. 2012); *Helvetica Servicing, Inc. v. Giraudo*, 241 Ariz. 498 (App. 2017). In May 2003, Michael and Kelly Pasquan (the "Pasquans") purchased a 4,000 square-foot home in Paradise Valley (the "Property") with a $600,000 loan from Hamilton Bank ("Hamilton

loan") and a cash payment. Over the next several years, the Pasquans substantially renovated the Property, expanding the home by 7,000 square feet. In 2004-2005, the Pasquans borrowed approximately $2.1 million from Desert Hills Bank ("Desert Hills loan"). The Pasquans used a portion of the Desert Hills loan to refinance the Hamilton loan, then applied the remainder of the proceeds toward the renovation/expansion project. They also borrowed $225,000 from Pasquan's father and put that money toward the expansion and charged another $140,000 on credit cards for the project.

¶4        In September 2006, the Pasquans borrowed $3.4 million from Helvetica, secured by a deed of trust on the Property. The Pasquans used the proceeds of the Helvetica loan to pay off the Desert Hills loan, the loan from Pasquan's father, the credit card debt, loan fees, and interest. They were left with $357,172.72 in cash from the loan proceeds, from which they made interest payments to Helvetica and paid for landscaping, maintenance, taxes, utilities, and marketing.

¶5        The Pasquans defaulted on the Helvetica loan, and Helvetica sued to judicially foreclose. On April 9, 2009, Helvetica obtained a judgment against the Pasquans for the amount due on the loan plus attorneys' fees and a foreclosure judgment on the Property. After a sheriff's sale, the superior court entered a deficiency judgment against the Pasquans for $1,936,825.53.

¶6        Pasquan[1] appealed, and, in *Helvetica I*, we vacated the judgment and remanded for further consideration pursuant to § 33-729(A).[2] In that decision, we held that a construction loan used to build a home that secures the debt qualifies as a purchase money loan for anti-deficiency protection under § 33-729(A) and refinancing a purchase money loan does not destroy the original loan's status. *Helvetica I*, 229 Ariz. at 499-502, ¶¶ 23, 32, 37. Further, when loan proceeds are used for "both purchase money and non-purchase money sums, a lender may pursue a deficiency judgment for the latter amounts" if they can be traced and segregated. *Id.* at 501-02, ¶¶ 34, 37; *see First Financial Bank, N.A. v. Claassen*, 238 Ariz. 160, 163, ¶ 10 (App. 2015).

---

[1]        The Pasquans divorced in 2009. Kelly Pasquan is not a party to this appeal.

[2]        When a deed of trust is judicially foreclosed, the provisions under A.R.S. § 33-729(A) apply. A.R.S. § 33-814(E).

¶7        *Helvetica I* remanded the matter to the superior court and directed it to address the following issues:

> 1. The amount of the Hamilton Loan payoff, which is entitled to anti-deficiency protection.
>
> 2. Whether the deeds of trust at issue cover the newly constructed residence.
>
> 3. Whether and to what extent loan proceeds, beginning with the first Desert Hills loan, were disbursed for construction of the residence and/or payment of the remaining purchase price of the Property.
>
> 4. The purposes for which the Helvetica Loan proceeds were disbursed.
>
> 5. The amount of a revised default judgment against Pasquan that includes only non-purchase money sums.

229 Ariz. at 502, ¶ 38.

¶8        On remand, after a bench trial, the superior court ruled that: (1) "The amount of the Hamilton Mortgage loan payoff was $600,000"; (2) all of the Desert Hills loan was "secured by deeds of trust that covered the real property and the buildings and improvements then existing or subsequently erected on the property," but the loans from Pasquan's father and the credit card debt were unsecured; (3) all of the money the Pasquans borrowed from Desert Hills, all of the money they borrowed from Pasquan's father, and all of the credit card purchases were "used for construction of the residence" on the Property with the exception of the $600,000 used to pay off the Hamilton loan; (4) the Helvetica proceeds were used to pay loan fees, loan interest, construction costs, and cash to borrowers; and (5) Helvetica was entitled to a deficiency judgment against Pasquan of $341,188.35.

¶9        Helvetica timely appealed and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.    Standard of Review

¶10       On appeal, we view the evidence in the light most favorable to sustaining the superior court's judgment. *Rogus v. Lords*, 166 Ariz. 600,

4

601 (App. 1991). When an appeal presents a mixed question of law and fact, although we defer to the superior court's factual findings, we review *de novo* its legal conclusions. *In re MH 2008-001752*, 222 Ariz. 567, 569 n.3, ¶ 7 (App. 2009). We are not bound by the superior court's conclusions of law that combine both fact and law when there is an error as to the law. *Egan v. Fridlund-Horne*, 221 Ariz. 229, 232, ¶ 8 (App. 2009).

II.    The Desert Hills Loan

¶11    Helvetica does not dispute the superior court's ruling that the $600,000 that Pasquan used to refinance the Hamilton loan was a purchase money obligation under § 33-729. It argues, however, that the court erred by ruling that the loan proceeds Pasquan used to pay off the Desert Hills debt were entitled to the same protection. Helvetica argues those amounts financed home improvements, not home construction.

¶12    In *Helvetica I*, we held that a construction loan will qualify as a purchase money obligation when the deed of trust securing the loan covers the land and the dwelling constructed on the property, and the loan proceeds were used to construct a dwelling that meets the size and use requirements of § 33-729(A). 229 Ariz. at 501, ¶ 32. We noted, however, that a construction loan used to build a residence is significantly different for this purpose from a loan used to improve an existing home. *Id.* at 499 n.6, ¶ 25 (citing California's interpretation of an analogous statute recognizing such a distinction). Although a construction loan may fall within the anti-deficiency statute, a home improvement loan will not. *Id.* Whether a loan is a construction loan or a home improvement loan depends on the facts. *Id.*

¶13    Helvetica contends that the Desert Hills loan was not a construction loan but a home improvement loan because (1) Pasquan described his home renovation at trial as a "remodel"; (2) the nature of the work permits and certificate of completion are consistent with a home improvement loan rather than a construction loan; and (3) the 7,000 square-foot addition was not built "from scratch on a vacant lot." Pasquan contends, in contrast, that the Desert Hills loan helped finance some 7,000 square feet of additions to his home and was for that reason a home construction loan, not a home improvement loan under the distinction we drew in *Helvetica I*.

¶14    Neither the case law nor the statutes define a "home construction loan" as we applied that term in *Helvetica I*. In the absence of

clarification by the legislature, we must use common sense to apply the rule announced in *Helvetica I* to the facts before the superior court.

¶15        On that basis, we conclude that the superior court erred by deciding that the entirety of the Desert Hills loan was a construction loan for purposes of anti-deficiency protection under § 33-729.  Based on the evidence before the court after *Helvetica I* was decided, we conclude that except for the $600,000 used to pay off the refinanced original purchase loan, the Desert Hills loan financed home improvement, not home construction.  *See Sw. Sav. & Loan Ass'n v. Ludi*, 122 Ariz. 226, 228 (1979) ("property improvement loans" not covered by the anti-deficiency statute).

¶16        In fact, Pasquan testified that he lived in the home during the entire time of the renovation, that the project was not a complete "tear down," and that, for as long as he has owned the Property, it was never a vacant lot.  Pasquan also testified that he purchased the home in 2003 and the renovation/expansion took the next four years.  Pasquan first remodeled the upper level of the home by adding a game room, two bedrooms, a kitchen, and a bathroom.  Then, he renovated the entire downstairs as he lived and managed the renovation project from the upper level of the home.  He tracked expenditures on spreadsheets that he updated weekly.  He testified he spent nearly $275,000 on the project in 2003, nearly $310,000 in 2004, $613,000 in 2005, nearly $720,000 in 2006, and $93,000 in 2007.  He installed a pool for more than $100,000; built a detached 2,500 square-foot, eight-car garage at a cost of between $120,000 and $125,000; spent "much more" than $1,000,000 on improvements to the interior of the home, including adding a master bathroom, closets, a breakfast area, and a kitchen, and installed approximately $389,000 in interior upgrades, including appliances, theater chairs, cabinets, flooring, fireplace, venetian plastering, and a wine cellar.  He also spent $142,000 on landscaping, including "4,000 plants and trees."

¶17        The superior court admitted work permits issued by the Town of Paradise Valley for the addition of the master bedroom and closets, breakfast area, kitchen, screen walls, gates, the detached garage, and the pool.

¶18        The renovation/expansion project Pasquan completed was immense in scope, and doubtless added considerable value to the Property that secured the Helvetica loan.  But we cannot overlook that he did not build a new home from scratch.  The home that secured his original $600,000 purchase money loan had two stories, three bedrooms, three bathrooms, a living room and a dining room, a three-car garage, and a

swimming pool.    Over a period of years, Pasquan methodically transformed that home into a much grander dwelling.  But considering all the facts in the record, and in light of our supreme court's holding in *Ludi*, we hold that the loan he obtained to do that from Desert Hills was a home improvement loan, not a loan for home construction.

III.    Loan Fees

**¶19**        Helvetica also challenges the superior court's finding that "points, interest, and reserves" paid in connection with the Helvetica loan are entitled to anti-deficiency protection.  We held in *Claassen* that interest, late fees, and costs commonly associated with refinancing a purchase money loan "are properly considered purchase money obligations."  238 Ariz. at 163, ¶¶ 14-15.   The superior court properly recognized that principle in ruling that such costs are protected under § 33-729 "to the extent that the Helvetica loan was otherwise a purchase money obligation." Because we have concluded that only $600,000 of the Desert Hills loan falls within § 33-729, however, the superior court's application of *Claassen* to the Helvetica loan must be recalculated.

**¶20**        Helvetica argues that *Helvetica I* ruled that the interest on the Helvetica loan, at $32,555 per month, was not a purchase-money obligation. Helvetica misrepresents *Helvetica I*'s characterization of the loan's $32,555 monthly interest.  We did not hold that such interest payments were non-purchase money sums; the reference Helvetica cites was in a footnote stating the record required further development.  *Helvetica I*, 229 Ariz. at 501 n.7, ¶ 34.

## CONCLUSION

**¶21**        Only the $600,000 used to pay off the original purchase money loan, and the associated loan fees and interest, are entitled to anti-deficiency protection under § 33-729.  *See Claassen*, 238 Ariz. at 163, ¶ 15; *Ludi*, 122 Ariz. at 228.  Accordingly, we vacate the judgment and remand for entry of a revised judgment consistent with this decision.

**¶22** Both parties seek attorneys' fees under A.R.S. § 12-341.01, which authorizes a fee award to the successful party in a contested action arising out of contract. In the exercise of our discretion, we deny both requests.

